**Herman U. BEVERLY, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

No. 94–839.

United States Court of Veterans Appeals.

Sept. 19, 1996.

Roger W. Rutherford, Norton, VA, was on the brief for appellant.

Mary Lou Keener, General Counsel; Norman G. Cooper, Assistant General Counsel; Thomas A. McLaughlin, Deputy Assistant General Counsel; and John D. McNamee, Washington, DC, were on the brief, for appellee.

Before FARLEY, IVERS and STEINBERG, Judges.

IVERS, Judge:

Herman U. Beverly appeals a June 1, 1994, decision of the Board of Veterans' Appeals (BVA or Board) denying both service connection for residuals of a left knee injury and an increased rating for residuals of a service-connected left wrist fracture, currently rated 10% disabling, and granting a 10% rating for the service-connected left wrist fracture on an extraschedular basis. *Herman U. Beverly,* BVA 94–08526 (June 1, 1994). The Court has jurisdiction over the case pursuant to 38 U.S.C. § 7252(a). For the reasons set forth below, the Court will affirm the Board's decision.

## I. Factual Background

The appellant served on active duty in the United States Air Force from August 26, 1956, to August 25, 1964. Record (R.) at 19.

Service medical records (SMRs) from that period show that three years prior to enlistment the appellant had injured his left knee in a fall from a tree. R. at 33. On his induction medical history report, he noted having had a " 'trick' or locked knee." R. at 31. During service, the appellant complained of continued left knee pain and finally underwent knee surgery on May 15, 1957, to repair a torn medial meniscus. R. at 34, 36, 37. During a follow-up examination in August 1957, the physician noted that "reflexes of left knee reveal[ ] a full [range of motion] except for loss [of] 5–10 [degrees of] flexion." R. at 39. The appellant was returned to full-time duty on August 15, 1957. *Ibid.*

On November 21, 1957, the appellant underwent another physical examination in which the physician diagnosed him as having a "possible fracture [in the] left transverse process 5th cervical vertebra." R. at 40, 83. The cervical injury was apparently the result of an automobile accident that occurred a few days before the exam. *Ibid.* The radiographic report showed "no evidence of bony trauma affecting the cervical spine." R. at 83.

The appellant's medical history also shows that he sustained a minor injury to his right knee in May 1958 while throwing a ball. R. at 44. The pain continued for several weeks, prompting the appellant to remark that "it pains so much that it keeps me awake at night." R. at 45.

In late January 1960, the appellant fractured his left wrist while playing basketball. R. at 52. The fracture went untreated for several months. R. at 54. In May 1961, the appellant underwent bone graft surgery to repair the fracture in his left wrist. R. at 61–63. Approximately a year later, the appellant returned to the orthopedic clinic complaining of pain in the left hand and wrist. R. at 69. He was diagnosed with traumatic arthritis. *Ibid.* His discharge examination report noted a "[s]mall scar on medial left wrist [with] no loss of motion, strength[,] or function", and a "[s]car medial aspect left knee." R. at 21. The examiner's notes reported that the appellant's notation of a "trick" knee referred to the "left meniscecto-

my, 1957, no loss of motion, function[,] or strength of knee." R. at 22, 23.

The appellant underwent surgery in October 1986 for a herniated intervertebral disk, nerve root compression, and lumbar spondylosis. R. at 161–62. In January 1987, the appellant returned for a follow-up examination. R. at 165. Notes from that examination show that reflex activity in both the upper and lower extremities was normal and that, although his back was symptomatic, there was no increased discomfort in the lower back. Ibid. The appellant was diagnosed with low back disorder. Ibid.

On March 23, 1987, the appellant filed for non-service-connected pension for lower back problems. R. at 147–50. In June 1987, a VA regional office (RO) sent the appellant a letter informing him that his claim was denied on the ground that he had not submitted sufficient medical evidence to support his claim. R. at 158. In July 1987, the appellant asked the RO to reconsider his claim. R. at 160. The RO reopened the pension claim and denied pension. R. at 170, 172.

The appellant filed another claim on July 24, 1991, requesting service connection for arthritis in the right knee and left wrist. R. at 174–77. The RO scheduled a physical examination on August 16, 1991. R. at 183, 185, 188. An examination of the appellant's right knee revealed "no recent bony injury or dislocation," only "[d]egenerative change consisting of medial joint space narrowing and marginal spurring." R. at 185. An x-ray examination of the appellant's left wrist revealed "mild degenerative arthritic change manifest in cortical cysts and marginal spurring." R. at 188. In August 1991, the appellant noted that, because of his left hand, he was unable to work as a mechanic, was unable to drive a car with his left hand, and "can't do any kind of work with it". R. at 190.

On December 6, 1991, the RO granted service connection for the fracture of the left wrist. R. at 200–01. Based upon the latest medical examination, the RO awarded a 10% rating for the wrist fracture. Service connection for the right knee condition, however, was denied. R. at 201. In its rating decision, the RO stated that "[t]here was no evidence of trauma to the knee during service." Ibid.

The appellant filed a Notice of Disagreement (NOD) on January 2, 1992, claiming that his wrist condition deserved a higher rating and that his right knee condition was aggravated in service. R. at 210. He perfected an appeal to the BVA on March 20, 1992. R. at 221.

In a June 18, 1992, written submission to the Board, the appellant's representative asked VA to reconsider the 10% rating for the wrist because there was "functional loss ... and extreme pain." R. at 229. The representative also requested that VA clarify which knee (right or left) it had found not deserving of service connection. Ibid. The representative pointed out that the medical evidence indicated a left knee condition but that the appellant had filed for, and had been denied, service connection for his right knee problems.

The Board issued a decision on November 23, 1992, remanding the case to the RO to clarify whether the appellant was seeking service connection for a left or right knee disability; to attempt to obtain certain medical records referred to by the appellant in August 1991; and to schedule a VA orthopedic examination "to determine the nature and extent of any current left knee pathology." R. at 232–35; see R. at 190. The appellant's claim for an increased rating for the wrist fracture was deferred until the other issue was resolved. R. at 234.

In a letter dated January 26, 1993, VA acknowledged receipt of the appellant's November 25, 1992, statement that indicated that he wished to receive service connection for his left rather than right knee condition. R. at 242, 249. In response, VA informed the appellant that his claim would be treated as a new claim and that he would have to submit within 60 days the medical evidence referenced by the Board with respect to his knee condition. Ibid. In April, the appellant underwent another physical evaluation to determine the condition of his left knee. R. at 262–65. The orthopedist, Dr. Marc Aiken, diagnosed the appellant as having "pseudogout." Pseudogout is an acute epi-

sode of synovitis. STEDMAN'S MEDICAL DICTIONARY 1451 (26th ed.1995) [hereinafter STEDMAN'S]. Synovitis is the inflammation of synovial membrane around a joint. STEDMAN'S 1746. Dr. Aiken stated, "I feel that much of his discomfort about the knee is most likely related to the problems to the foot and ankle which most likely may be secondary to back problems rather than a past left knee injury." R. at 264.

After reviewing all of the evidence, including the results of the latest physical examination, the RO issued another rating decision on June 4, 1993. R. at 271. In that decision, the RO reaffirmed its earlier decision to deny service connection for the appellant's left knee disability. The Statement of the Case (SOC) explained that the evidence showed that the knee condition was preexisting and was not aggravated by service. R. at 277.

The appellant appealed this decision to the BVA, which granted the appellant an extra-schedular rating of 20% for the wrist condition but affirmed the RO decision denying service connection for the left knee condition. R. at 5–13. The appellant then appealed to this Court.

## II. Analysis

### A. Claim for Service Connection— Residuals of Knee Injury

■■■■ A veteran is entitled to service connection for a disease or injury incurred in or aggravated by service. 38 U.S.C. § 1110; 38 C.F.R. §§ 3.303, 3.304 (1995). Regarding aggravation of a preexisting injury or disease, title 38 of the United States Code provides:

> A preexisting injury or disease will be considered to have been aggravated by active military, naval, or air service, where there is an increase in disability during such service, unless there is a specific finding that the increase in disability is due to the natural progress of the disease.

38 U.S.C. § 1153. The presumption of aggravation is applicable only if the preservice disability underwent an increase in severity during service. *Hunt v. Derwinski*, 1 Vet. App. 292, 296 (1991); *see also Browder v. Brown*, 5 Vet.App. 268, 271 (1993). "The determination of whether a preexisting disability was aggravated by service is a ques-

tion of fact." *Doran v. Brown*, 6 Vet.App. 283, 286 (1994). The Court reviews the Board's finding of aggravation, like other findings of fact, under the "clearly erroneous" standard. *Id.* at 287; *Gilbert v. Derwinski*, 1 Vet.App. 49, 53 (1990).

■■ The appellant argues that his preexisting knee disability was aggravated after he underwent arthroscopic surgery while in active service. Appellant's Brief (Br.) at 13. Although the record shows that the appellant experienced some periodic pain and stiffness in the knee (R. at 34, 39) during service, there is no evidence to show that the appellant experienced persistent worsening of his knee condition in service. In *Hunt*, the Court held that "temporary or intermittent flare-ups during service of a preexisting injury or disease are not sufficient to be considered 'aggravation in service' unless the underlying condition, as contrasted to symptoms, is worsened." 1 Vet.App. at 297; *see also Browder*, 5 Vet.App. at 270–71.

In this case, not only does the record *not* show that the appellant's knee disorder worsened in service, it shows that his condition actually *improved*. During the postoperative examination, the physician noted that "[e]xcept for some temporary joint effusion, the patient did very well and is now able to ambulate without symptoms and has good quadriceps strength and full knee motion." R. at 37. Medical notes prepared during a physical examination in November 1962, showed that there was "[g]ood strength and range of motion of the left knee." R. at 89. The medical report from the appellant's separation examination in July 1964 refers to the appellant's "trick knee" and notes "no loss of motion, function[,] or strength of knee." R. at 24. Finally, pursuant to the BVA's remand, the appellant underwent another orthopedic examination in March 1993. The examining VA physician diagnosed the appellant as having pseudogout and opined that "much of his [the appellant's] discomfort about the knee is most likely related to the problems to the foot and ankle which most likely may be secondary to back problems rather than a past left knee injury." R. at 264. Based upon this evidence, the Board found that there was no aggravation of the

preservice left knee injury, and the Court holds that BVA's findings are not clearly erroneous.

### B. Claim for Scheduler Rating Greater than 10% for Residuals of Wrist Fracture

■ The appellant contends that the BVA's failure to determine the current status of the wrist disability amounts to a failure of the "duty to assist" required by 38 U.S.C. § 5107(a). He asserts that such an examination is needed to determine whether he had developed ankylosis of the wrist so as to entitle him to a rating greater than 10% under 38 C.F.R. § 4.71a, Diagnostic Code 5214 (1995). The Court notes that the appellant was afforded a VA examination (including x-rays) of his wrist in August 1991 with respect to his claim on appeal and that such examination did not reveal ankylosis of the left wrist. *See* R. at 188. Accordingly, the Court holds that VA did not fail in carrying out the duty to assist, and the Court will affirm the Board's finding that a higher schedular evaluation for the wrist was not warranted.

### C. Claim for an Extra–Schedular Rating

■ After reviewing the medical evidence and the testimony of the appellant, the BVA issued an extra-schedular rating of 10% for the appellant's wrist condition. R. at 12. In its decision, the Board stated that "in this case the disability picture is exceptional or unusual so as to warrant an evaluation on an extra-schedular basis." *Ibid.* On appeal, the appellant claims that the Board should have ordered a physical examination of the appellant's wrist before issuing the extra-scheduler rating. Appellant's Br. at 14.

The assigning of an extra-schedular rating by the BVA in the first instance on appeal is, however, not authorized by statute or regulation. *See* 38 C.F.R. § 3.321(b)(1); *Floyd v. Brown*, 9 Vet.App. 88, 96 (1996) (Secretary has excluded Board from exercising this authority in the first instance) *mot. for rev. en banc den.*, 9 Vet.App. 253 (en banc order 1996); *cf. Bagwell v. Brown*, 9 Vet.App. 337, 338–39 (1996) (on reconsideration, distin-guishing *Floyd, supra*, by holding that Board's denial of § 3.321(b) extraschedular rating was authorized). Consistent with *Floyd*, the Court is unable to hold in this case that there was prejudice to the appellant in the Board's grant of an extraschedular rating and must affirm the award. *See Floyd*, 9 Vet.App. at 96 (concluding that Board's action resulted in granting of extraschedular rating "and thus did not result in prejudice to the veteran").

### III. Conclusion

Accordingly, the June 1, 1994, BVA decision is AFFIRMED.