Citation Nr: 1456918 
Decision Date: 12/31/14 Archive Date: 01/09/15

DOCKET NO. 11-18 236 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Columbia, South Carolina


THE ISSUES
 
1. Whether new and material evidence has been received in order to reopen a claim of entitlement to service connection for a right wrist disability.
 
2. Entitlement to service connection for a right wrist disability. 
 
3. Entitlement to service connection for a left knee disorder.
 
4. Entitlement to service connection for a right knee disorder.
 
5. Entitlement to service connection for hypertension.
 
6. Entitlement to service connection for a right hip disorder, to include as secondary to a back disability.
 
7. Entitlement to service connection for a left hip disorder, to include as secondary to a back disability.
 
 
REPRESENTATION
 
Appellant represented by: The American Legion
 
 
WITNESS AT HEARING ON APPEAL
 
Appellant
 
 
ATTORNEY FOR THE BOARD
 
Matthew Schlickenmaier, Associate Counsel
 
 
INTRODUCTION
 
The Veteran had active duty service from July 1989 to July 1993. 
 
This matter comes before the Board of Veterans' Appeals (Board) on appeal from July 2007 and October 2008 rating decisions issued by the Regional Office (RO) in Columbia, South Carolina. 
 
In April 2013, the Veteran testified at a hearing before the undersigned. A transcript of the hearing is of record.
 
The Board has recharacterized one issue from a June 2011 statement of the case from which the present appeal arises; specifically, whether new and material evidence has been received in order to reopen a claim of entitlement to service connection for a left knee disorder. As the title page indicates, the Board has construed this as a claim of entitlement to service connection for a left knee disorder. A May 2008 memorandum reflects that in March 2008, i.e., within one year of a July 2007 rating decision denying entitlement to service connection for a left knee disorder, the Veteran submitted correspondence to the RO, which the RO subsequently lost. While the RO described the document as a "claim," in a June 2008 statement, the Veteran clarified that he intended to continue pursuing a claim of entitlement to service connection for a left knee disorder. The Board will construe the March 2008 correspondence as a timely notice of disagreement to the July 2007 rating decision..
 
The same analysis applies to the claim regarding whether new and material evidence has been received in order to reopen a claim of entitlement to service connection for a right wrist disorder. The July 2007 rating decision also declined to reopen the claim of entitlement to service connection for a right wrist disability, and in the June 2008 statement, the appellant expressed his intent to continue pursuing entitlement to service connection for a right wrist disability. As such, the present appeal arises from the July 2007 rating decision; the date of the last final disallowance has been adjusted accordingly.
 
In addition to the paper claims file, there is a Virtual VA paperless claims file associated with the appeal. A review of the documents in such file reveals the April 2013 hearing transcript and VA treatment records from November 2010 to May 2012. All other documents are either duplicative of the evidence in the claims file or irrelevant to the issues on appeal. 
 
The issues of entitlement to service connection for right and left hip disorders are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).
 
 
FINDINGS OF FACT
 
1. Evidence added to the record since an unappealed July 1997 rating decision, which declined to reopen the claim of entitlement to service connection for a right wrist disorder, is not cumulative or redundant of the evidence of record at the time of the decision and raises a reasonable possibility of substantiating the Veteran's claim.
 
2. A right wrist disability existed prior to the Veteran's active duty service but did not permanently increase in severity during service. Any other current right wrist disability is not shown to have been present in service or otherwise related to service. Right wrist arthritis was not compensably disabling within one year following the Veteran's separation from active duty..
 
3. The Veteran's left knee disorder is not shown to have been present in service, left knee arthritis was not compensably disabling within one year following his separation from active duty, and any current left knee disorder is not otherwise related to service.
 
4. The Veteran's right knee disorder is not shown to have been present in service, right knee arthritis was not compensably disabling within year following his separation from active duty any current right knee disorder is not otherwise related to service.
 
5. The Veteran's hypertension is not shown to have been present in service, was not compensably disabling within one year following his separation from active duty, and is not otherwise related to service.
 
 
CONCLUSIONS OF LAW
 
1. New and material evidence has been presented to reopen a claim of entitlement to service connection for a right wrist disability. 38 U.S.C.A. § 5108 (West 2014); 38 C.F.R. § 3.156(a) (2014).
 
2. A preexisting right wrist disability was not aggravated by service, and right wrist arthritis may not be presumed to have been so incurred. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 1131, 1137, 1153, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.307, 3.309 (2014).
 
3. A left knee disorder was not incurred in or aggravated by service and left knee arthritis may not be presumed to have been so incurred. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 1131, 1137, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.307, 3.309.
 
4. A right knee disorder was not incurred in or aggravated by service and right knee arthritis may not be presumed to have been so incurred. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 1131, 1137, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.307, 3.309.
 
5. Hypertension was not incurred in or aggravated by service and may not be presumed to have been so incurred. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 1131, 1137, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.307, 3.309, 4.104.
 
 
REASONS AND BASES FOR FINDINGS AND CONCLUSIONS
 
Duties to Notify and Assist
 
The requirements of 38 U.S.C.A. §§ 5103 and 5103A have been met. There is no issue as to providing an appropriate application form or completeness of the application. In April 2007 and July 2008, VA notified the Veteran of the information and evidence needed to substantiate his claim, to include notice of what part of that evidence is to be provided by the claimant, and notice of what part VA will attempt to obtain. Both letters advised the Veteran that his claim for a right wrist disability was previously denied, defined "new and material evidence" and explained the reasons why the claim was previously denied in accordance with Kent v. Nicholson, 20 Vet. App. 1 (2006). The issues were readjudicated in June 2011.
 
VA fulfilled its duty to assist the Veteran in obtaining identified and available evidence needed to substantiate a claim, and as warranted by law, affording VA examinations. There is no evidence that additional records have yet to be requested, or that additional examinations are in order. A VA examination was provided in May 2011 which for reasons discussed below, the Board finds adequate. 

A January 2007 statement indicates that the Veteran served in the National Guard from 1993 to 2001. Although documents from his National Guard service are not of record, the Veteran is not prejudiced because he contends that the issues on appeal are related to his period of active duty.
 
At the April 2013 Board hearing, testimony was elicited by the representative and the Veterans Law Judge regarding the Veteran's symptomatology during and since service; thus the material issues on appeal were fully developed. 38 C.F.R. § 3.103(c)(2) (2014).
 
Legal Principles and Analysis
 
I. New and Material Evidence
 
The Veteran seeks to reopen a claim of entitlement to service connection for a right wrist disorder. After reviewing all of the evidence of record available at the time a July 1997 rating decision declined to reopen the claim of entitlement to service connection for a right wrist disorder, in light of the evidence submitted since that decision, the Board finds that new evidence raises a reasonable possibility of substantiating the appellant's claim. In this regard, a May 2011 VA examination diagnosed the appellant with right wrist tendonitis. Evidence of record at the time of the July 1997 rating decision failed to establish the existence of a current disability. Accordingly, the claim is reopened. 38 C.F.R. § 3.156(a).
 
While July 2007 and October 2008 rating decisions declined to reopen the claim of entitlement to service connection for a right wrist disorder, because the June 2011 statement of the case reopened the claim and denied it on the merits, there is no prejudice to the Board addressing the claim on the merits as well. Bernard v. Brown, 4 Vet. App. 384, 393 (1993).
 
II. Service Connection
 
The Veteran claims entitlement to service connection a right wrist disability, left and right knee disorders, and hypertension. Service connection may be granted for a disability resulting from a disease or injury incurred in or aggravated by active service. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303(a). To establish entitlement to service-connected compensation benefits, a veteran must show: "(1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2010). Service connection may be granted for any disease initially diagnosed after service when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).
 
Hypertension and arthritis, if manifest to a degree of 10 percent within one year after separation from active duty, may be presumed to have been incurred in service. 38 U.S.C.A. §§ 1112, 1113; 38 C.F.R. §§ 3.307, 3.309. Alternatively, a nexus to service may be presumed where there is continuity of symptomatology since service. Walker v. Shinseki, 708 F.3d 1331, 1338-40 (Fed. Cir. 2013).
 
Veterans are considered to be in sound condition when examined, accepted, and enrolled for service, except as to defects, infirmities, or disorders noted at entrance to service, or where clear and unmistakable evidence demonstrates that an injury or disease existed prior thereto and was not aggravated by such service. 38 C.F.R. § 3.304(b).
 
A pre-existing injury or disease will be considered to have been aggravated during service when there is an increase in disability during service, unless there is a specific finding that the increase in disability is due to the natural progression of the disease. 38 U.S.C.A. § 1153; 38 C.F.R. § 3.306(a). The presumption of aggravation applies only when pre-service disability increases in severity during service. Beverly v. Brown, 9 Vet. App. 402, 405 (1996). Aggravation may not be conceded where the disability underwent no increase in severity during service on the basis of all the evidence of record pertaining to the manifestations of the disability prior to, during, and subsequent to service. 38 U.S.C.A. § 1153; 38 C.F.R. § 3.306.
 
Except as otherwise provided by law, a claimant has the responsibility to present and support a claim for benefits. VA shall consider all information and lay and medical evidence of record in a case and when there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, VA shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990). To deny a claim on its merits, the evidence must preponderate against the claim. Alemany v. Brown, 9 Vet. App. 518, 519 (1996).
 
The Board has reviewed all of the evidence in the appellant's claims file, to include any VBMS or Virtual VA file. Although there is an obligation to provide adequate reasons and bases supporting this decision, there is no requirement that the evidence submitted by the Veteran or obtained on his behalf be discussed in detail. Rather, the Board's analysis below will focus specifically on what evidence is needed to substantiate the claim and what the evidence in the claims file shows, or fails to show, with respect to the claim. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) and Timberlake v. Gober, 14 Vet. App. 122, 128-30 (2000).
 
Right Wrist Disorder
 
At the April 2013 hearing, the Veteran alleged that his preexisting right wrist disability was aggravated by service, specifically as a result of his military occupational specialty as a wire systems installer, which required him to climb poles, and as a result of several falls. The Veteran reports that he injured his wrist in a motor vehicle accident prior to service.
 
At a March 1989 entrance examination, the Veteran reported that he had previously broken his right wrist and the examiner noted a "possible right wrist fracture, not shown on x-ray Aug 1988." At a May 1993 separation examination, the Veteran again reported that prior to service he had broken his right wrist in a car accident but the examiner noted only normal upper extremities. Service treatment records are otherwise negative for complaints or treatment involving the right wrist.
 
At an August 1993 VA general medical evaluation, physical examination of the right wrist indicated an "excellent" range of motion and no discrete tenderness over the wrist or distal radius. X-rays only revealed evidence of triquetral carpal bone coalition, which the examiner noted was a congenital anomaly, and "which means that they never separated and are still fused." X-rays otherwise showed no evidence of fracture, malunion, nonunion, or malalignment and good distal radius joint surface. The examiner's impression was normal right wrist.

A May 2011 right wrist x-ray revealed a normal radiocarpal joint, normal intercarpal anatomic relationships and normal metacarpals. No degenerative changes were present and the impression was normal a radiographic examination.
 
After reviewing the claims file and examining the Veteran, a May 2011 VA examiner diagnosed right wrist tendonitis but opined that it was less likely as not that the right wrist disorder had its onset during active duty or was permanently aggravated by active duty because any right wrist pain was likely due to tendonitis and not directly related to a history of fracture. Moreover, there was no documentation of treatment for a wrist disorder during active duty, and because x-rays did not reveal any bony abnormalities, the preservice fracture was likely well healed.
 
In light of the above, the Board finds that the preponderance of the evidence shows that the preexisting right wrist disorder did not increase in severity during service. The appellant's DD-214 confirms he worked as a wire systems installer and the Veteran is competent to report symptoms of right wrist pain; however, the lack of corroborating in-service notations of complaints or treatment for a right wrist disability undermines his assertions that it was aggravated in service. See Buchanan v. Nicholson, 451 F.3d 1331, 1337 (2006). Again, service treatment records are negative for complaints or treatment relating to the right wrist and the May 1993 separation examination shows normal upper extremities. As such, the presumption of aggravation is not for application. 38 U.S.C.A. § 1153.
 
For the same reasons, there is no evidence that his current right wrist tendonitis began during service or is otherwise related to service. 38 U.S.C.A. §§ 1110, 1131. Indeed, the August 1993 VA examiner noted a normal right wrist and the May 2011 VA examiner opined that any right wrist disorder was unrelated to service.
 
As the August 1993 x-ray did not evidence any degenerative changes, right wrist arthritis was not compensably disabling within one year following separation from active duty. 38 U.S.C.A. §§ 1112, 1113. There is no evidence of a continuity of symptomatology since service. Walker, 708 F.3d at 1338-40.
 
The Veteran has qualifying Persian Gulf War service but to the extent he may allege that his right wrist disability is the result of an undiagnosed illness or a chronic multisymptom illness, the May 2011 diagnosis of right wrist tendonitis, as a known clinical diagnosis, precludes entitlement under such a theory. See 38 U.S.C.A. § 1117 (2014).
 
Therefore the claim is denied. As a preponderance of the evidence is against the claim, the benefit-of-the-doubt doctrine does not apply. 38 U.S.C.A. § 5107.
 
Left and Right Knee Disorders
 
At his April 2013 hearing, the Veteran alleged that his bilateral knee disorders are the result of a few in-service parachute landings and that since that time he has experienced locking, stiffness and aching in both knees.
 
At the a March 1989 entrance examination, the Veteran denied a prior history of knee disorders. Clinical evaluation revealed noted normal lower extremities. Although a September 1992 service treatment record shows complaints of right shin pain, nothing specifically relating to the right knee was noted. 

An April 1993 service treatment record shows that the Veteran complained of left knee and shin pain which began six days prior but denied experiencing joint trauma in the prior 72 hours. The examiner noted a possible assessment of retropatellar pain syndrome. At the May 1993 separation examination, the Veteran reported a prior history of left knee problems but clinical evaluation revealed normal lower extremities.
 
At the August 1993 VA general medical examination, the Veteran reported that in service he was involved in a parachute jump where he fell and injured his left knee. He complained of occasional knee and shin aches and reported that he was unable to walk for significant distance or stand for significant periods of time. The examiner diagnosed the Veteran with a history of a knee injury with minor evidence of impairment at the present time. Following further examination of the left knee, the examiner diagnosed patella tendonitis and possible lateral collateral ligamentous strain. X-rays of the left knee revealed no evidence of significant degenerative arthritis.
 
A December 2010 x-ray of the bilateral tibia, fibula and knees revealed no acute fracture, dislocation or radiopaque foreign body, and no bony lesion or periosteal reaction. The heights of the knee joints were maintained. The impression was negative.
 
May 2011 knee x-rays revealed normal distal right and left femurs, unremarkable proximal tibia and fibula, and very mild degenerative changes with hyperostosis of the intercondylar tibial spines. There was no medial or lateral compartmental narrowing, unremarkable right and left patellofemoral articulations, and no joint effusion. The impression was "very minimal" degenerative changes of the right and left knee joints.
 
Following an examination in May 2011 a VA examiner diagnosed the Veteran with bilateral knee arthritis but concluded that he could not determine the etiology of the knee disorders without resorting to speculation. Since the Veteran had airborne training duties, the examiner conceded the possibility of undocumented repetitive trauma from parachute landings; however, while the Veteran had been seen over a three week period for left knee pain, that treatment was not associated with any trauma and there was no other documentation supporting a high impact injury to the knees or any indication of chronic pain during active duty. Thus, the examiner reasoned, without documentation of any injuries sustained during active duty, a direct relationship to service could not be established without resorting to speculation. The Board finds the opinion adequate since the examiner reviewed the claims file, thoroughly examined the Veteran and provided a fully supported rational for his conclusion. See Jones v. Shinseki, 23 Vet. App. 382 (2010) (holding that an examiner's conclusion that he or she cannot state an opinion without resorting to speculation must be supported by a rationale to be adequate).
 
An August 2013 letter stated that a recent MRI of the knees showed a small amount of fluid in each joint but no other significant abnormalities, that the ligaments were intact and that there was no significant arthritis.
 
After a review of the record the Board finds that the preponderance of the evidence shows that the Veteran's bilateral knee disorders are unrelated to service. Although there is some evidence of an in-service left knee injury, any injuries resolved prior to separation since the May 1993 examiner noted normal lower extremities. While the August 1993 VA examiner noted diagnoses of left knee patella tendonitis and possible lateral collateral ligamentous strain, the May 2011 VA examiner could not connect those to service without resorting to speculation. Medical evidence indicating that a disorder "may or may not" be related to service is too speculative to establish a relationship to service. See Tirpak v. Derwinski, 2 Vet. App. 609, 611 (1992). Service treatment records are negative for treatment or complaints of a right knee disorder. 
 
While the appellant is competent to report symptoms of knee pain, diagnosing a knee disorder and linking it to service is outside the scope of the Veteran's lay competence. Jandreau v. Nicholson, 492 F.3d 1372, 1377 (2007). The lack of corroborating in-service notations regarding complaints or treatment for a right knee disability undermines his assertions that it onset in service. See Buchanan, 451 F.3d at 1337. Moreover, the May 1993 separation examiner's notation of normal lower extremities is inconsistent with the Veteran's claim that a left knee disorder is related to service. That the claims file shows significant periods of time without knee complaints problems further supports the conclusion that neither knee disorder is related to service. See Maxson v. Gober, 230 F.3d 1330, 1333 (Fed. Cir. 2000). Therefore the Board finds that a preponderance of the evidence indicates that neither knee disorder was incurred in service. 38 U.S.C.A. §§ 1110, 1131.
 
While the August 1993 VA examiner's statement that left knee x-rays showed no evidence of "significant" degenerative arthritis suggests that there may have been minimal evidence of arthritis, because the examiner characterized it as not significant and because he attributed the left knee pain to patella tendonitis, the Board finds this insufficient to establish that arthritis manifest to at least a degree of 10 percent within one year of separation from active duty. There is no evidence of any right knee arthritis within the one year presumptive period. 38 U.S.C.A. §§ 1112, 1113. Nor is there evidence of a continuity of symptomatology since service. Walker, 708 F.3d at 1338-40.
 
To the extent the Veteran may allege that any bilateral knee disability is the result of an undiagnosed illness or a chronic multisymptom illness, the May 2011 diagnoses of left and right knee arthritis, as a known clinical diagnosis, precludes entitlement under such a theory. See 38 U.S.C.A. § 1117.
 
Therefore the claims are denied. As a preponderance of the evidence is against the claims, the benefit-of-the-doubt doctrine does not apply. 38 U.S.C.A. § 5107.
 
Hypertension
 
At the April 2013 hearing, the appellant claimed that he had been diagnosed with hypertension soon after entering active duty and that he remembered seeing elevated blood pressure readings when he visited sick call.
 
For VA purposes, hypertension is defined as diastolic blood pressure that is predominantly 90 mm or greater, or systolic blood pressure that is predominantly 160 mm or greater with a diastolic blood pressure of less than 90 mm. Hypertension or isolated systolic hypertension must be confirmed by readings taken two or more times on at least three different days. 38 C.F.R. § 4.104, Diagnostic Code 7101, Note (1). 
 
Here, a current diagnosis of hypertension is conceded because numerous VA and private treatment records since the Veteran's March 2008 claim show blood pressure in excess of the requirements of 38 C.F.R. § 4.104. The evidence, however, preponderates against finding that hypertension is related to the appellant's active duty service.
 
At the March 1989 entrance examination, the Veteran denied a prior history relating to high blood pressure and the examiner noted a normal vascular system. Blood pressure was 150/70. A September 1991 service treatment record shows blood pressure readings of 158/86, 158/104, and 146/103 after the Veteran reported to sick call due to a sudden onset of testicular pain. Otherwise, service treatment records that document blood pressure show readings less than 160/90 and diastolic pressure less than 90 mm. At the May 1993 separation examination, the Veteran reported that he did not know whether he had a prior history of high blood pressure and the examiner noted a normal vascular system. Blood pressure was 126/76.
 
At the August 1993 VA general medical examination, the appellant's blood pressure was within normal limits.
 
An August 2008 private treatment record from "Dr. R.B." indicates that the Veteran was diagnosed with hypertension in 2001.
 
The May 2011 VA examiner opined that it was less likely than not that the Veteran's hypertension had its onset during active duty because transient elevations in blood pressure can occur in response to pain or stress, which does not translate to a diagnosis of hypertension unless the elevation in blood pressure is persistent. Moreover, the examiner stated that a single elevation in blood pressure in response to testicular pain is an expected finding and that the Veteran was not diagnosed with hypertension until many years after discharge. The examiner's opinion is adequate as it is consistent with the evidence of record, the examiner reviewed the claims file and examined the Veteran.
 
In light of the evidence, the Board finds that a preponderance of the evidence is against finding that hypertension is related to service. 38 U.S.C.A. §§ 1110, 1131. While the Veteran may speak to matters such as symptomatology, to include dizziness or headaches, as well as having been told he was diagnosed with hypertension or having been told about elevated blood pressure readings, the Veteran is not competent to offer a diagnosis of hypertension or guess as to elevated blood pressure readings. See Davidson v. Shinseki, 581 F.3d 1313 (2009). To the extent the Veteran claims that he experienced dizziness or headaches in service, this may be conceded; however, his assertion at the April 2013 hearing that he recalled seeing elevated blood pressure readings is inconsistent with all but one service treatment record. The May 2011 VA examiner's negative opinion further weighs against the Veteran's claim.
 
The Board is cognizant that about two weeks prior to the May 2011 VA examination, the claims file was sent to a different examiner who opined that "Concerning his hypertension it is at least as likely as not that his current diagnosis of hypertension is related to the elevated blood pressure that he had while he was in the military then [sic] a one time elevated reading he had back in 1991 was likely as a result of the pain that he was undergoing during that time. A thorough review of the rest of his service treatment records did not reveal any elevated blood pressure readings during his service." The phrasing of the examiner's opinion obscures its meaning, but even after resolving all linguistic ambiguity in the Veteran's favor, the most favorable interpretation is that it is as likely as not, i.e. there is a 50 percent chance, that hypertension is related to the single reading in service. This interpretation is undermined, however, by the fact that the examiner emphasized that the service treatment records were otherwise negative for elevated blood pressure readings and because the examiner stated that the elevated blood pressure readings in the September 1991 record could have been the result of the severe right testicle pain. To the extent the opinion supports the Veteran's claim, the Board finds its probative value outweighed by the subsequent May 2011 VA opinion. Indeed, 38 C.F.R. § 4.104 requires that hypertension be confirmed by readings taken on at least three different days.
 
In light of the blood pressure readings taken at the August 1993 VA general medical examination, there is no evidence that hypertension was compensably disabling within one year after separation from active duty or that there has been a continuity of symptomatology since service. 38 U.S.C.A. §§ 1112, 1113; Walker, 708 F.3d at 1338-40.
 
To the extent the Veteran may allege that his hypertension is the result of an undiagnosed illness or a chronic multisymptom illness, the May 2011 diagnosis of hypertension, as a known clinical diagnosis, precludes entitlement under such a theory. See 38 U.S.C.A. § 1117.
 
Therefore the claim is denied. As a preponderance of the evidence is against the claim, the benefit-of-the-doubt doctrine does not apply. 38 U.S.C.A. § 5107.
 
 
ORDER
 
New and material evidence having been received, the claim of entitlement to service connection for a right wrist disability is reopened.
 
Entitlement to service connection for a right wrist disability is denied.
 
Entitlement to service connection for a left knee disorder is denied.
 
Entitlement to service connection for a right knee disorder is denied.
 
Entitlement to service connection for hypertension is denied.
 
 
REMAND
 
At the April 2013 hearing, the Veteran testified that he believed his bilateral hip disorders were secondary to his service-connected back low back disorder. See page 15, April 2013 Hearing Transcript. A March 2008 letter from "Dr. K.C." noted that the Veteran had recently been seen for low back pain associated with hip radiculopathy, a November 2006 private treatment record shows a diagnosis of right sciatica, and the May 2011 VA examiner diagnosed the appellant with left trochanteric bursitis and iliotibial band syndrome.
 
While the Veteran is already service connected for left lower extremity radiculopathy associated with degenerative disc disease, the May 2011 VA examiner did not address whether left trochanteric bursitis, left iliotibial band syndrome, or right hip radiculopathy were caused or aggravated by his service-connected back disorder. An addendum opinion should therefore be provided.
 
Accordingly, the case is REMANDED for the following action:
 
1. Forward the claims file to the examiner who prepared the May 2011 VA opinion or, if that examiner is unavailable, to another suitably qualified VA physician examiner. The physician examiner should review all pertinent records associated with the claims file, including the Veteran's service treatment records, post-service medical records and lay statements. The rationale for all opinions expressed must be provided. If an opinion cannot be provided without resort to speculation, it must be noted in the opinion report, and a rationale should be provided for that conclusion. If additional examination is indicated, it should be scheduled in accordance with applicable procedures.
 
The examiner must opine whether it is at least as likely as not that the service-connected low back disorder caused or aggravated (permanently made worse) his left trochanteric bursitis, left iliotibial band syndrome or right hip radiculopathy. If aggravation is found, the examiner should attempt to objectively quantify the degree of aggravation above and beyond the level of impairment had no aggravation occurred.
 
2. After the development requested has been completed, the AOJ should review any report to ensure that it is in complete compliance with the directives of this remand. If the report is deficient in any manner, the AOJ must implement corrective procedures at once. 
 
3. After completing any additional development deemed necessary, readjudicate the claim. If any benefit requested on appeal is not granted to the Veteran's satisfaction, the appellant and his representative should be furnished a supplemental statement of the case, which addresses all of the evidence obtained after the issuance of the last supplemental statement of the case, and provided an opportunity to respond. The case should then be returned to the Board for further appellate consideration, if in order.
 
The appellant has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).
 
This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



______________________________________________
DEREK R. BROWN
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs