Citation Nr: 1714102 
Decision Date: 04/28/17 Archive Date: 05/05/17

DOCKET NO. 12-27 572 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Reno, Nevada


THE ISSUE

Entitlement to service connection for excessive burn scars of the neck and chest, with sweat gland disorder and dyspnea.


REPRESENTATION

Appellant represented by: Maxwell D. Kinman, Attorney


ATTORNEY FOR THE BOARD

J. Benjamin Winburn, Associate Counsel


INTRODUCTION

The Veteran served on active duty from March 2011 to August 2011.

This case comes before the Board of Veterans' Appeals (Board) on appeal from a November 2011 rating decision of the Department of Veteran's Affairs (VA) Regional Office (RO) in Reno, Nevada.

In a December 2013 decision, the Board denied the Veteran's claim for entitlement to service connection for excessive burn scars of the neck and chest, with sweat gland disorder and dyspnea. The Veteran appealed the Board's decision to the United States Court of Appeals for Veteran's Claims (Court). In a June 2015 Memorandum Decision, the Court vacated and remanded the Board's decision for further development. In October 2015, the Board remanded the case for action consistent with the Memorandum Decision. The case has now been returned to the Board for further appellate action.


FINDINGS OF FACT

1. Excessive burn scars of the neck and chest were noted on the Veteran's Report of Medical Examination upon entry into active service and therefore pre-existed his entrance into active service.

2. The Veteran's excessive burn scars with sweat gland disorder and dyspnea disability was not permanently aggravated by service beyond the natural progress of the injury or disease.


CONCLUSION OF LAW

The Veteran's pre-existing excessive burn scars of the neck and chest with a sweat gland disorder and dyspnea was not aggravated during his active service. 38 U.S.C.A. §§ 1110, 1153 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.304, 3.306 (2016).



REASONS AND BASES FOR FINDINGS AND CONCLUSION

VA will assist a claimant in obtaining evidence necessary to substantiate a claim, but is not required to provide assistance to a claimant if there is no reasonable possibility that assistance would aid in substantiating the claim. VA must also notify the claimant of any information, and any medical or lay evidence, not previously provided to VA that is necessary to substantiate the claim. 38 U.S.C.A. § 5103, 5103A (West 2014); 38 C.F.R. § 3.159 (2016). 

Notice to a claimant should be provided at the time, or immediately after, VA receives a complete or substantially complete application for benefits. 38 U.S.C.A. § 5103(a) (West 2014); Pelegrini v. Principi, 18 Vet. App. 112 (2004). The timing requirement applies equally to the effective date element of a service connection claim. Dingess v. Nicholson, 19 Vet. App. 473 (2006). 

The Veteran was provided adequate notice in response to this claim. The record shows that he was mailed letters in June 2011 and March 2016 advising him of what the evidence must show and of his, and VA's, respective duties in obtaining evidence. The pre-decisional June 2011 and March 2016 letters also provided the Veteran with appropriate notice with respect to the disability rating and effective date elements of his claim.

The Veteran has been afforded adequate assistance in response to his claim. His service treatment records (STRs) are of record. VA Medical Center and private treatment notes have been obtained. He has been provided appropriate VA examinations. Neither he nor his representative has identified any outstanding evidence, to include medical records, which could be obtained to substantiate the claim. The Board is also unaware of any outstanding evidence.

Service connection may be granted for disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C.A. §§ 1110 (West 2014); 38 C.F.R. § 3.303 (2016). 

A Veteran will be considered to have been in sound condition when examined, accepted and enrolled for service, except as to defects, infirmities, or disorders noted at the time of the examination, acceptance, and enrollment, or where clear and unmistakable (obvious or manifest) evidence demonstrates that an injury or disease existed before acceptance and enrollment and was not aggravated by such service. 38 U.S.C.A. §§ 1111, 1137 (West 2014); 38 C.F.R. § 3.304(b) (2016).

A pre-existing injury or disease will be considered to have been aggravated during service when there is an increase in disability during service, unless there is a specific finding that the increase in disability is due to the natural progression of the disease. 38 U.S.C.A. § 1153 (West 2014); 38 C.F.R. § 3.306 (a) (2016). 

The presumption of aggravation applies only when pre-service disability increases in severity during service. Beverly v. Brown, 9 Vet. App. 402 (1996). Aggravation may not be conceded where the disability underwent no increase in severity during service on the basis of all the evidence of record pertaining to the manifestations of the disability prior to, during, and subsequent to service. 38 U.S.C.A. § 1153 (West 2014); 38 C.F.R. § 3.306 (2016); Falzone v. Brown, 8 Vet. App. 398 (1995). Evidence of a temporary flare-up, without more, does not satisfy the level of proof required of a non-combat Veteran to establish an increase in disability. Davis v. Principi, 276 F.3d 1341 (Fed. Cir. 2002). The evidence must show a lasting worsening of the condition, meaning an increase in severity that existed at the time of separation from service and still exists currently. Hunt v. Derwinski, 1 Vet. App. 2929, 296-97 (1991); Davis v. Principi, 276 F.3d 1341, 1345 (Fed. Cir. 2002).

The claimant bears the burden of proving that the preexisting condition worsened during service and that such worsening was beyond the natural progression of the disease. Donnellan v. Shinseki, 24 Vet. App. 167, 172 (2010).

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, VA shall resolve reasonable doubt in favor of the claimant. 38 U.S.C.A. § 5107 (West 2014); 38 C.F.R. § 3.102 (2016); Gilbert v. Derwinski, 1 Vet. App. 49 (1990). To deny a claim on its merits, the evidence must preponderate against the claim. Alemany v. Brown, 9 Vet. App. 518 (1996).

Here, excessive burn scars of the neck and chest, as well as skin graft surgical scars, were noted upon the Veteran's entrance into active service in 2011. The Veteran obtained a medical waiver from a dermatologist in October 2010 asserting that he was physically fit for service. The Board notes that the Veteran has never claimed that he originally sustained the burn scars in service; rather, the Veteran has always framed his claim for entitlement to service connection as an aggravation claim. As such, the Board finds that the Veteran's excessive burn scars of the neck and chest, with sweat gland disorder and dyspnea, pre-existed service and the Veteran may only claim service connection by aggravation. Therefore, the Board will not address a theory of direct service connection with respect to this claim.

In deciding a claim based on aggravation, after the presence of a preexisting condition has been established, the Board must determine (1) whether there has been any measured worsening of the condition during service, and (2) whether this constitutes an increase in disability. Browder v. Brown, 5 Vet. App. 268, 271 (1993); Hensley v. Brown, 5 Vet. App. 155, 163 (1993).

The Veteran is shown to have sustained excessive burns of his anterior neck and anterior chest in a fire accident when he was 3 years old. He underwent skin graft surgeries, which harvested superficial layers of skin from his thighs to address the burns to his neck and chest. When he was 17, the Veteran underwent further surgical revision to reduce contractures and reduce risk of interfering with neck motion. That specific condition was addressed in the 2010 medical waiver for entry into active service, wherein a dermatologist consultation assessed that the Veteran had no adverse impact to temperature regulation or restriction to mobility to date, and was physically fit to serve. The Report of Medical History upon entry into service shows that the Veteran denied a history of shortness of breath, wheezing, dizziness or fainting spells, and chest pain, and specifically noted the presence of excessive burn scars of the neck and chest as well as surgical skin graft harvest areas on his thighs.

STRs show that the Veteran suffered a heat stroke during a forced march in April 2011, two weeks after reporting for Army Basic Training at Fort Benning, Georgia. He was treated for symptoms of shortness of breath, wheezing, chest pain, dizziness or fainting spells, sweating impairment, and heat stress. STRs show that the Veteran reported shortness of breath, wheezing, dizziness or fainting spells, and chest pain or pressure throughout the day and night for 3-4 days after the march. In his initial diagnosis, the medical examiner noted that the Veteran's burn scars interfered with normal perspiring. In May 2011, the Veteran was diagnosed with a sweat gland disorder. A July 2011 STR shows that, as a result of the heat stroke incident and burn scar degradation problems associated with rucking, the Veteran was deemed to have limited capabilities and was allowed no physical exertion during Heat Category 4 or 5, no heavy lifting, no straining, and no impact or wearing of gear over the chest wall.

A July 2011 Medical Evaluation Board (MEB) opinion diagnosed the Veteran with anterior chest and neck scar tissue from burn [approximately 5 percent] with old scarring, contracture, reconstruction, and grafting with altered heat tolerance due to skin changes in sweating, noting that the condition was service aggravated. The opinion noted that the Veteran's condition had been stable in civilian life prior to active service and was exacerbated by physical training (PT) in Basic Training and heat stress exposure in the environment. The MEB opined that there were no permanent residuals from the experience, and that the Veteran returned to his baseline with cessation of military training and duties.

In October 2011, the Veteran was afforded a VA examination. At that time, it was noted that the Veteran did not have a respiratory disability. The Veteran's various scarring was documented and the examiner diagnosed anhidrosis. The examiner opined that the Veteran's scars, sweat gland, or breathing disabilities were not aggravated by active service. In this regard, the examiner noted that the Veteran's scars were not affected by his time in service and they did not affect his breathing condition as he did not have a diagnosed breathing condition. The examiner further noted that the Veteran's pre-existing scars did not affect his ability to sweat (anhidrosis) as the scars as that was the result of the Veteran's original burn and subsequent scarring and skin grafting. 

In September 2016, the Veteran was afforded another VA examination. At that time, the VA examiner noted that the Veteran did not have a respiratory disability, but did document the Veteran's extensive scarring. The VA examiner opined that the Veteran's excessive burn scars of the neck and chest, with sweat gland disorder and respiratory condition (dyspnea) clearly and unmistakably existed prior to service and was not aggravated beyond its natural progression by an in-service event, injury, or illness. In this regard, the examiner noted that the Veteran's burn scars were clearly documented to have existed prior to his active service as they occurred during his childhood and it was clearly noted in the medical records. The examiner further noted that the Veteran's scars were deep (full thickness) tissue that did not sweat as it no longer contained sweat glands. As a result of the nature of the scarring, the Veteran's disability could not have been aggravated by active service due to the fundamental biological nature of deep scar tissue, which medically would not have changed during his active service. The examiner further noted that the Veteran's pre-service medical records showed no evidence of recurrent dyspnea or other breathing disorder (no chronic pulmonary dysfunction problems pre-service). Further, following formal pulmonary function testing (PFT), the Veteran did not demonstrate any restrictive-type or obstructive-type pulmonary dysfunction. The examiner opined that the Veteran did not have chronic pulmonary dysfunction. The examiner noted that chronic meant ongoing, not the brief coughs or viral infections which we all have at one time or another; chronic implied a fundamental ongoing medical dysfunction, restrictive or obstructive, for which a PFT was used to identify.

The October 2011 and September 2016 VA medical opinion reports are adequate, when read in conjunction with one another, as the medical examiners thoroughly reviewed the claims file and discussed the relevant evidence, considered the contentions of the Veteran, and provided thorough supporting rationales for the conclusions reached. Barr v. Nicholson, 21 Vet. App. 303 (2007; Stefl v. Nicholson, 21 Vet. App. 120 (2007); Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008). Further, there are no medical opinions to the contrary. Therefore, the VA medical opinions of record are the most probative evidence of record. 

The Board has considered the Veteran's assertions that his excessive burn scarring with sweat gland disorder and dyspnea was permanently aggravated by service. The Board recognizes that the Veteran is competent to describe symptoms that he is able to perceive through the use of his senses. See Layno v. Brown, 6 Vet. App. 465, 469-71 (1994). However, a layperson without medical training is not qualified to render a medical opinion concerning the course of excessive burns scars with sweat gland and dyspnea disability over time. See Barr v. Nicholson, 21 Vet. App. 303, 307 (2007). The evidence does not show that the Veteran possesses the requisite training or credentials needed to render a competent opinion regarding the presence of a permanent worsening. Furthermore, the Board finds that this is not a simple question that can be determined based on mere personal observation by a lay person, and as such, the Veteran's lay testimony is not competent to establish that his excessive burn scarring with sweat gland disorder and dyspnea was aggravated by service. See Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007); see also Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009). 

Accordingly, the Board finds that the preponderance of the evidence is against the claim and entitlement to service connection for excessive burn scars, with sweat gland disorder and dyspnea is not warranted. 38 U.S.C.A. § 5107(b) (West 2014); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).


ORDER

Entitlement to service connection for excessive burn scars of the neck and chest, with sweat gland disorder and dyspnea is denied.



____________________________________________
Kristin Haddock
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs