﻿Citation Nr: AXXXXXXXX
Decision Date: 06/25/19 Archive Date: 06/24/19

DOCKET NO. 190212-3641
DATE: June 25, 2019

ORDER

Service connection for right eye disability, to include alternating exotropia, is denied.

FINDINGS OF FACT

1. The evidence of record supports a finding that the Veteran’s alternating exotropia (strabismus) pre-existed service, and underwent an increase in disability during service.

2. It is established by clear and unmistakable evidence that increase the in the severity of the Veteran’s alternating exotropia in service was due to the natural progress of the disease.

3. The evidence is against a finding that the Veteran has a right eye disability other than exotropia that is at least as likely as not related to his period of active duty service. 

CONCLUSIONS OF LAW

1. The criteria for service connection for right eye alternating exotropia are not met. 38 U.S.C. §§ 1110, 1131, 1111, 1153, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303, 3.306 (2018).

2. The criteria for service connection for a right eye disability other than alternating exotropia are not met. 38 U.S.C. §§ 1110, 1131, 1111, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303 (2018).

REASONS AND BASES FOR FINDINGS AND CONCLUSION

The Veteran had active service from October 1960 to June 1964. He selected the Higher-Level Review lane when he opted in to the Appeals Modernization Act (AMA) review system by submitting a Rapid Appeals Modernization Program (RAMP) election form. Accordingly, the January 2019 rating decision considered the evidence of record as of the date VA received the RAMP election form. The Veteran timely appealed this rating decision to the Board and requested direct review of the evidence considered by the Agency of Original Jurisdiction (AOJ).

In the January 2019 AMA decision, the AOJ found that new and relevant evidence was submitted to warrant readjudication of the claim for service connection for alternating exotropia. The Board is bound by this favorable finding. 84 Fed. Reg. 138, 167 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 3.104(c)).

The Board observes that although the Veteran’s right eye disability has been largely adjudicated as one for exotropia alone, the evidence of record does note the present of other right eye conditions, to include cataracts (removed), myopia and amblyopia. As such, the Board will expand the issue on appeal, and consider whether service connection may be granted for any right eye disability. Cf. Clemons v. Shinseki, 23 Vet. App. 1 (2009).

Service Connection

Service connection may be granted for a disability resulting from a disease or injury incurred or aggravated in active military service. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303(a).

Every Veteran shall be taken to have been in sound condition when examined, accepted and enrolled for service, except as to defects, infirmities, or disorders noted at the time of the examination, acceptance and enrollment, or where clear and unmistakable evidence demonstrates that the injury or disease existed before acceptance and enrollment and was not aggravated by such service. 38 U.S.C. § 1111.

With respect to the alternating exotropia, the presumption of sound condition on service entrance does not apply because strabismus and hypertropia of the right eye was noted on the Veteran’s enlistment examination in October 1960. Indeed, exotropia is defined as “strabismus in which there is permanent deviation of the visual axis of one eye away from that of the other, resulting in diplopia.” See Dorland’s Illustrated Medical Dictionary (31st ed. 2007). 

When a preexisting disease or injury is noted on entrance examination, section 1151 of the applicable statute provides that a preexisting injury or disease will be considered to have been aggravated by active military, naval, or air service, where there is an increase in disability during such service, unless there is a specific finding that the increase in disability is due the natural progress of the disease. 38 U.S.C. § 1153; 38 C.F.R. § 3.306(a).

The presumption of aggravation applies only when a pre-existing disability increases in severity during service. Beverly v. Brown, 9 Vet. App. 402, 405 (1996). Aggravation may not be conceded where the disorder underwent no increase in severity during service on the basis of all the evidence of record pertaining to the manifestations of the disorder prior to, during, and subsequent to service. 38 C.F.R. § 3.306 (b); Falzone v. Brown, 8 Vet. App. 398, 402 (1995). Temporary or intermittent flare-ups of a preexisting injury or disease are not sufficient to be considered “aggravation in service” unless the underlying condition itself, as contrasted with mere symptoms, has worsened. See Davis v. Principi, 276 F.3d 1341, 1346-47 (Fed. Cir. 2002).

In considering whether to apply the presumption of aggravation, the Board must first determine whether there is an increase in the severity of the preexisting disorder. 38 C.F.R. § 3.306(a). The claimant bears the burden of showing that the preexisting condition worsened in service. Wagner v. Principi, 370 F.3d 1080 (Fed. Cir. 2004). Until the claimant shows an increase in disability occurred in service, the presumption of aggravation does not attach and, thus, does not shift the burden of rebuttal to the Secretary. Once the presumption has been established, the burden then shifts to the Government to show clear and unmistakable (obvious or manifest) evidence that the increase in disability was a result of the natural progress of the disease. Id; see Horn v. Shinseki, 25 Vet. App. 231 (2011).

As noted, strabismus and hypertropia were noted on the Veteran’s October 1960 enlistment examination. An April 1963 note shows that the Veteran had exotropia a form of strabismus) that was noted to be congenital. In June 1963, the Veteran was seen for a history of double vision, and he was diagnosed with congenital hypertropia and strabismus. The physician in service specifically noted that the Veteran’s eye condition had become “progressively worse.” The Veteran opted not to have strabismus surgery and instead opted to use prisms. His April 1964 separation examination reflected his congenital right eye condition.

Based on this in-service indication that the Veteran’s eye condition became progressively worse, and absent any evidence contrary to this observation, the Board will resolve all doubt in the Veteran’s favor and find that the Veteran’s service treatment records show that his eye condition underwent an increase in disability during service.

Post-service treatment records show a March 2013 diagnosis of exotropia. 

In a January 2016 statement, the Veteran stated that he had no problems with his right eye upon entry into service, and that he started having trouble with his right eye and received treatment in service.

He underwent a VA eye conditions examination in May 2018. The examiner diagnosed alternating exotropia and pseudophakia and noted that the Veteran did not want surgical correction for the strabismus. The examiner concluded that the Veteran had a large angle exotropia that had decompensated by the time he was in the military. The examiner opined that the condition was more likely than not related to the diagnosis of exotropia in the Veteran’s service treatment records. The opinion lacks probative value insofar as the examiner did not address the various notations in the Veteran’s service treatment records that the condition existed prior to service.

The Veteran underwent a clarification examination in December 2018. The examiner reviewed the Veteran’s claims file and performed a physical examination of the Veteran. The examiner noted that the Veteran had been diagnosed with strabismus prior to entering the military, and had diplopia diagnosed during his service. The examiner noted that diplopia was part of the natural progression of strabismus. He ultimately concluded that the Veteran’s preexisting congenital alternating exotropia was not aggravated beyond its natural progression by any in-service event. The rationale was that there was no event in service or any injury to the eye that would have caused aggravation of his exotropia. Rather, the examiner said, what occurred was the natural progression of the congenital condition, with nothing in service making it worse. The Board finds that the December 2018 medical opinion is probative and is supported by sufficient rationale.

While the Veteran is competent to discuss his observable symptoms, he is not competent to determine the etiology of his eye disorder, as such determination requires medical knowledge due to the complexity of the issues involved. Kahana v. Shinseki, 24 Vet. App. 428 (2011). Thus, to the extent the Veteran asserts that his exotropia onset during his active period of service, he does not possess the required medical expertise to render such an opinion.

Taken together, the Veteran’s service treatment records and the December 2018 VA opinion establish that the Veteran’s alternating exotropia (strabismus) preexisted service and that the increase in disability during service, as evidenced by the notations in the service treatment records, was clearly and unmistakably due to the natural progress of the condition. Specifically, the December 2018 VA examiner reviewed the Veteran’s contemporaneous service records and opined that what occurred in service was a natural progression of the Veteran’s preexisting eye condition. The rationale was that the Veteran did not sustain any specific injury or event in service that would have caused the condition to worsen beyond its natural progression. The VA examiner’s opinion is supported by the medical definition of exotropia, which as cited above, notes that the condition results in “diplopia,” which is precisely what occurred during service. The examiner’s opinion is probative, because it is based on an accurate medical history and provides an explanation that contains clear conclusions and supporting data. Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008). 

Accordingly, a preponderance of the evidence establishes that any increase in severity of the Veteran’s pre-existing alternating exotropia during service was due solely to the natural progression of the disease. The claim must therefore must be denied.

Insofar as the evidence of record also notes the presence of amblyopia or myopia, such are refractive errors of the eye and cannot be service-connected as a matter of law. See 38 C.F.R. § 3.303(c). As noted above, the Veteran’s diplopia has been related to his nonservice-connected exotropia. The Veteran was also noted to have bilateral cataracts that have been since removed, but the December 2018 VA examiner specifically indicated that such were age-related. The evidence does not show, nor does the Veteran assert that cataracts, with resulting pseudophakia post-removal, were incurred in service, or are otherwise related to service. Although the May 2018 and December 2018 VA examiner’s both noted the presence of a surgically corrected retinal tear by retinopexy, this was in reference to the left eye, and not the right. While the May 2018 examiner noted at the end of his report that the retinal tear repair was in both eyes, this appears to be a clerical error, when considering the summary of treatment for the left eye only noted earlier in the report, as well as the examination findings of the December 2018 examiner. The May 2018 VA examiner also identified retinopathy in the left eye only, and earlier private treatment records similarly note the presence of macular puckering of the left eye only. See a May 19, 2016 retina imaging report. Thus, there is no probative evidence of record indicating that any other right eye disability currently present is at least as likely as not related to the Veteran’s period of service. 

In sum, for the reasons discussed above, service connection cannot be established for any right eye disability, to include alternating exotropia. The benefit sought on appeal is denied. 

Double Click Here to Sign 

V. Chiappetta

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD Polly Johnson, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.