Citation Nr: 1702628 
Decision Date: 01/31/17 Archive Date: 02/09/17

DOCKET NO. 07-27 934 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Huntington, West Virginia


THE ISSUES

1. Entitlement to service connection for residuals, post-operative right inguinal hernia.

2. Entitlement to a total disability rating based on individual unemployability due to service-connected disabilities (TDIU).

3. Entitlement to special monthly compensation at the housebound rate prior to
 May 19, 2011.


REPRESENTATION

Appellant represented by: Jan Dils, Attorney


WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

R. Erdheim, Counsel


INTRODUCTION

The Veteran had active military service from June 1974 to June 1977 and February
 2003 through May 2004. The Veteran also served in the Army National Guard of
 West Virginia from 1978 through 2007. The Veteran died in May 2011. The appellant is the Veteran's surviving spouse. She was substituted as the appellant in April 2013.

This matter originally came before the Board of Veterans' Appeals (Board) on appeal from rating decisions issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Huntington, West Virginia. 

As to the issue of entitlement to service connection for a right inguinal hernia, the appellant appeared and testified at a hearing before the undersigned Veterans Law Judge in May 2013. Thereafter, in September 2013, the Board remanded that claim for additional development. In September 2013, the Board also took jurisdiction of a claim for a TDIU as well as a claim for special monthly compensation at the housebound rate prior to May 19, 2011, because those claims were intertwined with claims for increased ratings that were then also on appeal and were decided. The Board remanded the claims for a TDIU and SMC. The Board remanded all three claims as listed on the title page again in March 2016.
The Board notes that the appellant has already testified before the undersigned with regard to the issue of entitlement to service connection for a right inguinal hernia, thus, the Board interprets the appellant's current request for a hearing, as further explained in the remand portion of this decision, to be related to the claims for a TDIU and SMC at the housebound rate prior to May 19, 2011.

The issues of entitlement to a TDIU and SMC at the housebound rate prior to May 19, 2011, are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

1. The Veteran's right inguinal hernia was not incurred while on active duty or in the line of duty during a period of active duty for training or inactive duty for training.

2. The Veteran's right inguinal hernia pre-existed his second period of active duty; there was no increase in disability during such service beyond the natural progression of the disease.


CONCLUSION OF LAW

The Veteran's right inguinal hernia was not incurred in or aggravated by active service. 38 U.S.C.A. §§ 1101, 1110, 5107 (West 2014); 38 C.F.R. §§ 3.6, 3.102, 3.303, 3.306 (2016).




REASONS AND BASES FOR FINDINGS AND CONCLUSION

With respect to the claim herein, VA has met all statutory and regulatory notice and duty to assist provisions. See 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326; see also Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015). The Board notes that in August 2016, the appellant's representative withdrew the previously submitted October 2014 request for a copy of the Veteran's claim file under the Freedom of Information Act. Thereafter, the appellant's representative continued to submit a status inquiry related to the appellant's request for a hearing, but did not delete the portion of the status inquiry that requested a copy of the Veteran's claims file. The Board interprets the portion of the representative's status inquiry that also requested a copy of the claims file to be an administrative error, when interpreting the record in its totality. The Board also finds that there has been substantial compliance with the previous remand in that the RO obtained the available records related to the Veteran's military service and federal government employment from the Defense Personnel Records Information Retirement System and the National Personnel Records Center.

Service connection may be granted for a disability resulting from a disease or injury incurred in or aggravated by active service. See 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303 (a). Establishing service connection generally requires competent evidence of the following: (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a nexus between the claimed in-service disease and the present disability. See Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007); Hickson v. West, 12 Vet. App. 247 (1999); Caluza v. Brown, 7 Vet. App. 498 (1995), aff'd per curiam, 78 F.3d 604 (Fed. Cir. 1996) (table).

Service connection may also be established by chronicity or continuity of symptoms for certain chronic conditions. 38 C.F.R. § 3.303 (b); see Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). If a veteran served 90 days or more on active duty, service incurrence will be presumed for certain chronic diseases when it is manifested to a compensable degree within one year of separation from service. 38 U.S.C.A. §§ 1110, 1112, 1113; 38 C.F.R. §§ 3.307, 3.309. 

In adjudicating a claim, the Board must assess the competence and credibility of the veteran. See Buchanan v. Nicholson, 451 F.3d 1331 (Fed. Cir. 2006); Washington v. Nicholson, 19 Vet. App. 362, 368-69 (2005). The Board also has a duty to assess the credibility and weight given to evidence. Madden v. Gober, 125 F.3d 1477, 1481 (Fed. Cir. 1997); Wensch v. Principi, 15 Vet. App. 362, 367 (2001). 

Active military, naval, or air service includes any period of active duty training during which the individual concerned was disabled or died from a disease or injury incurred in or aggravated in line of duty, or any period of inactive duty training during which the individual concerned was disabled or died from injury incurred in or aggravated in line of duty. 38 U.S.C.A. § 101 (21), (24); 38 C.F.R. § 3.6 (a), (d). Active duty training is, inter alia, full-time duty in the Armed Forces performed by Reserves for training purposes. 38 C.F.R. § 3.6 (c)(1). Active duty also includes any periods of inactive duty for training during which an individual becomes disabled or dies from an acute myocardial infarction, a cardiac arrest, or a cerebrovascular accident that occurred during such training. 38 U.S.C.A. § 101 (24); 38 C.F.R. § 3.6. The term "active duty for training" includes, among other things, certain full time duty in the Army National Guard. Active duty for training includes full-time duty with the Army National Guard of any State under sections 316, 502, 503, 504, or 505 of Title 32, or the prior corresponding provisions of law. See 38 U.S.C.A. § 101 (22)(C); 38 C.F.R. § 3.6 (c). However, presumptive periods do not apply to active duty training or inactive duty training. Biggins v. Derwinski, 1 Vet. App. 474 (1991).

Every veteran shall be taken to have been in sound condition when examined, accepted, and enrolled for service, except as to defects, infirmities, or disorders noted at the time of the examination, acceptance, and enrollment, or where clear and unmistakable evidence demonstrates that the injury or disease existed before acceptance and enrollment and was not aggravated by such service. 38 U.S.C.A. § 1111. Thus, when no preexisting condition is noted upon entry into service, the veteran is presumed sound. See Wagner v. Principi, 370 F.3d 1089 (Fed.Cir.2004). 

However, if a preexisting disorder is noted upon entry into service, the veteran cannot bring a claim for service connection for that disorder, but the veteran may bring a claim for service-connected aggravation of that disorder. Jensen v. Brown, 19 F.3d 1413 (Fed.Cir.1994). 

Where a preexisting disease or injury is noted on the entrance examination, section 1153 of the statute provides that "[a] preexisting injury or disease will be considered to have been aggravated by active military, naval, or air service, where there is an increase in disability during such service, unless there is a specific finding that the increase in disability is due to the natural progress of the disease." 38 U.S.C.A. § 1153; 38 C.F.R. § 3.306 (a). 

In considering whether to apply the presumption of aggravation, the Board must first determine whether there was an increase in the disability's severity and, if so, whether it was beyond the natural progression of the disease. 38 C.F.R. § 3.306 (a). The claimant bears the burden of showing that the preexisting condition worsened in service. Wagner, supra. Until the claimant shows an increase in disability occurred in service, the presumption of aggravation does not attach and, thus, does not shift the burden of rebuttal to the Secretary. Once the presumption has been established, the burden shifts to the Government to show by clear and unmistakable evidence that the increase in disability was a result of the natural progress of the disease. Id; see also Horn v. Shinseki, 25 Vet.App. 231 (2011). 

Temporary or intermittent flare-ups of symptoms of a preexisting condition, alone, do not constitute sufficient evidence for a non-combat veteran to show increased disability for the purposes of determinations of service connection based on aggravation under section 1153 unless the underlying condition worsened. Davis v. Principi, 276 F. 3d 1341 (Fed. Cir. 2002); Hunt v. Derwinski, 1 Vet. App. 292 (1991).

Once the evidence is assembled, the Board is responsible for determining whether the preponderance of the evidence is against the claim. If so, the claim is denied; if the evidence is in support of the claim or is in equal balance, the claim is allowed. 38 U.S.C.A. § 5107; Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

The appellant contends that the Veteran's right inguinal hernia was either caused or aggravated by his active service.

First, the Board notes that the Veteran underwent surgery for a right inguinal hernia in September 1999. During that period of time, he was serving as a full-time, civilian employee for the West Virginia National Guard, however, he was not considered to be on active duty, active duty for training, or inactive duty for training as defined by 38 C.F.R. § 3.6 (c). Thus, for purposes of service connection, he does not meet the criteria for veteran status for that period of time. 

In making the above determination, the Board further notes that at his 2008 hearing before a decision review officer, the Veteran reported that he had first experienced the right inguinal hernia in 1988 during a drill exercise at a training weekend. However, that testimony conflicts with the September 1999 treatment record wherein the Veteran reported that he had first experienced the right inguinal hernia three years previously after completing heavy lifting. That testimony also conflicts with the service treatment records, to include such detailed records as in December 1994, that are negative for any finding of a previous hernia or symptoms of a right hernia. Prior to the 1999 surgery, the record is negative for an indication of a hernia, or of any abdominal injury while lifting during a drill exercise. The inconsistency between the Veteran's testimony and the record calls into question the Veteran's report of incident, and thus the Board assigns less probative weight to the Veteran's lay statements of service incurrence. Accordingly, when assigning probative weight to the service treatment records dated throughout the 1980s and 1990s, and the 1999 private record related to right hernia surgery, the Board finds that the evidence does not support the contention that the right hernia was incurred during a period of active duty for training.

Importantly, the Veteran's and the appellant's contentions as to the onset of the right inguinal hernia are inconsistent during the appeal period. At her 2013 hearing before the Board, the appellant contended that the Veteran's right inguinal hernia was aggravated by his service in Iraq in 2003, and appeared to concede that he had originally experienced the hernia in civilian status in 1999. These contentions mirror the Veteran's as put forth in his March 2005 claim for service connection. Thus, the Board concludes that the Veteran's 1999 right hernia and hernia repair was not during a period of active service.

Subsequent treatment records from the Veteran's service in the Army National Guard continue to note that he had a right inguinal hernia, to include a November 2002 permanent profile stating that he had a hernia of the right and left lower abdomen. These records do not demonstrate a worsening of the Veteran's right inguinal hernia, but instead note of its existence.

The Veteran entered a period of active service in February 2003, at which time he was deployed to Iraq. There does not appear to be a formal entrance examination for this period of service, or a separation examination. Rather, the Veteran underwent brief pre- and post-deployment examination. The Board finds that despite the lack of full physical examination prior to deployment in 2003, the Army was already on notice of the Veteran's previous right inguinal hernia as it was noted in the ongoing Army National Guard records. Thus, the Board does not find that the Veteran was in sound condition upon entry into this period of active service as contemplated by 38 U.S.C.A. § 1111, with regard to the right inguinal hernia. In that regard, his permanent profile last updated in November 2002 noting the existence of the previous hernia was evidence that he was not in sound condition, and such was known prior to deployment.

Therefore, if the Veteran was already shown to have a pre-existing hernia, the question becomes whether there is indication of an increase in disability during service. However, although the Veteran has stated that his right inguinal hernia was aggravated by his active service in 2003, those records clearly demonstrate that he aggravated, or incurred, a left inguinal hernia November 2003, instead. The records are silent for indication that the Veteran experienced any symptoms related to his right inguinal hernia. The Veteran is already in receipt of service connection for his left inguinal hernia.

Accordingly, as the service treatment records directly contradict the Veteran's and appellant's statements of aggravation in service, and in fact do not show any indication of an increase in disability in service, the Board finds that the elements of service connection are not met.

Alternatively, when no preexisting condition is noted upon entry into service, the burden falls on the government to rebut the presumption of soundness by clear and unmistakable evidence that the disability was both preexisting and not aggravated by service. Wagner v. Principi, 370 F.3d 1089 (Fed. Cir. 2004). The government may show a lack of aggravation by establishing that there was no increase in disability during service or that any increase was due to the natural progress of the preexisting condition. Id. at 1096. A claimant is not required to show that the disease or injury increased in severity during service before VA meets both of these burdens. See VAOPGCPREC 3-2003. 

Under this alternative theory to the one analyzed above, when assuming that the Veteran was in fact in sound condition upon entry into this second period of active service, the Board finds that there is clear and unmistakable evidence that the Veteran's right inguinal hernia pre-existed his second period of active service, as evidenced by the 1999 record of right hernia repair. The Board also finds that there is clear and unmistakable evidence that the Veteran's pre-existing right hernia, status post repair, was not aggravated by his service because there is no evidence in the record that his right hernia increased in disability during this period of time. While the appellant contends that the Veteran did also aggravate his previous right hernia while in Iraq, the service treatment records are very clear in demonstrating that the Veteran suffered from a left hernia at that time. They are silent for a right hernia condition or symptom. Moreover, after service, the Veteran was shown to undergo a left hernia repair. Again, there was no indication of any residuals related to the previous right hernia. Accordingly, the Board finds that there is clear and unmistakable evidence that the Veteran's right inguinal hernia pre-existed his service and was not aggravated by his service.

While the Veteran is competent to report pain in the right lower quadrant in the 1980s and in 2003, such report is directly contradicted by the probative, contemporaneous service treatment records. The competent, credible evidence of record does not support the contention that he incurred a right hernia or suffered from an increase in disability of his right hernia during a period of active duty, active duty for training, or inactive duty for training. As such, the Board finds that the Veteran's claim for service connection for a right inguinal hernia must be denied.


ORDER

Service connection for residuals, post-operative right inguinal hernia is denied.

REMAND

The appellant has requested a hearing for the issues of entitlement to a TDIU and for special monthly compensation at the housebound rate prior to May 19, 2011. To date, she has not testified as to either of these appealed issues. Her request for a hearing complies with 38 C.F.R. § 20.1304. Accordingly, a hearing on these claims should be scheduled.

Accordingly, the case is REMANDED for the following action:

Schedule the appellant for a videoconference hearing before a Veterans Law Judge as to the issues of entitlement to a TDIU and special monthly compensation at the housebound rate prior to May 19, 2011. Once the hearing is conducted, or in the event the appellant cancels her hearing request or otherwise fails to report, the case should be returned to the Board.

The appellant has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).


______________________________________________
M. E. LARKIN
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs