John F. DAVIS, Claimant–Appellant,

v.

Anthony J. PRINCIPI, Secretary of Veterans Affairs, Respondent–Appellee.

No. 01–7029.

United States Court of Appeals, Federal Circuit.

Jan. 11, 2002.

---

Kenneth M. Carpenter, Carpenter, Chartered, of Topeka, KS, argued for claimant-appellant.

Domenique Kirchner, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for respondent-appellee. With him on the brief were Stuart E. Schiffer, Acting Assistant Attorney General; David M. Cohen, Director; and Donald E. Kinner, Assistant Director. Of counsel on the brief were Donald E. Zeglin, Deputy Assistant General Counsel; and David J. Barrans, Staff Attorney, Department of Veterans Affairs, of Washington, DC.

Before MICHEL, Circuit Judge, ARCHER, Senior Circuit Judge, and RADER, Circuit Judge.

RADER, Circuit Judge.

The United States Court of Appeals for Veterans Claims upheld the Board of Veterans' Appeals denial of service-connection for John F. Davis' psychiatric condition because the condition preexisted his entry into service and was not aggravated by his service. Because the Court of Appeals for Veterans Claims correctly construed the "increase in disability," 38 U.S.C. § 1153, to require a worsening of the underlying disability, this court affirms.

I.

Appellant, Mr. Davis, entered active duty in the United States Army in August 1971. On June 15, 1974, the Army granted Mr. Davis a voluntary discharge in response to charges against him of, *inter alia*, being absent without leave, assaulting a superior officer, and failing to obey lawful orders. A physician examined Mr. Davis on June 10, 1974, in conjunction with his discharge. Based upon the examination, the physician indicated that Mr. Davis was "overtly hostile and probably schizophrenic." The physician also indicated that Mr. Davis had not disclosed upon entrance into active service his prior history of mental illness and a prolonged hospitalization for schizophrenia.

In July 1990, Mr. Davis filed a claim with the Department of Veterans Affairs (VA) for service-connected disability compensation. Mr. Davis based his claim on schizophrenia. He alleged that he incurred this condition during service in 1974.

To collect compensation for a disability, a veteran must show "service-connection." To show service-connection, a veteran must present evidence that his military service either caused or aggravated a disorder. 38 U.S.C. § 1110 (1994). The regional office denied Mr. Davis' claim because it found that the record did not establish a verified diagnosis of an acquired psychiatric disorder during service or within one year of discharge. Mr. Davis appealed to the Board, which remanded to the regional office with instructions to develop the record further. After augmenting the record, the regional office found that Mr. Davis had schizophrenia before his entry into service and that his service did not permanently aggravate his schizophrenia beyond the normal progression of this disorder. Hence, the regional office once more denied Mr. Davis' claim for lack of a showing of service-connection.

Mr. Davis again appealed to the Board. In September 1997, the Board upheld the denial of service-connection. In its opinion, the Board affirmed the findings of the regional office that Mr. Davis had schizophrenia before his entry into service. The Board also affirmed that Mr. Davis' service had not aggravated his condition.

With respect to the preexistence of Mr. Davis' condition, the Board recognized that 38 U.S.C. § 1111 (1994) erected a pre-

sumption that the schizophrenia did not preexist his service because Mr. Davis received a clean medical examination on entry. Nevertheless, the Board found that the evidence on record rebutted the presumption of soundness and established the preexistence of Mr. Davis' psychiatric condition. The record included medical reports from Mr. Davis' 1997 VA psychiatric examination. At that time, Mr. Davis related various remembrances of his preservice life. These included his early ability to converse with animals, that he received commands from a disembodied voice he knew as the "berry pie lady," his observation of UFOs from the future coming back to the present, and his hospitalization for a schizophrenic episode.[1]

The Board also affirmed the finding of the regional office that Mr. Davis' psychiatric condition was not aggravated by his service. The Board based its conclusion on the examination report prepared by VA psychiatrists Drs. Geiser and Kanas based on their 1997 examination of Mr. Davis and his medical history. The examination report noted Mr. Davis' ongoing problems and diagnosed him as paranoid schizophrenic:

> It is our conclusion that it is as likely as not that the psychiatric disorder currently diagnosed is directly related to the psychiatric problems that the veteran experienced prior to the Service. The veteran appears to have had a schizophrenic breakdown prior to the Service, with reconstitution after treatment with chlorpromazine. The reconstitution appears to have been sufficient for him to manage fairly well

---

1. Following his discharge, Mr. Davis continued substance abuse begun prior to his service. He also was diagnosed with paranoid schizophrenia in January 1991 and was hos-

pitalized for substance abuse and psychiatric problems during portions of 1990 through 1992.

through the Army with a slight exacerbation at the time of his discharge....
It is our opinion that the patient was not significantly worse psychiatrically at his discharge compared to his enlistment in the Army.

In a psychiatric addendum, Dr. Geiser further stated: "[I]t is my opinion that the veteran's psychosis was not permanently aggravated beyond the normal progression of the disease by his military service ." Mr. Davis next appealed to the Court of Appeals for Veterans Claims, which affirmed the decision and reasoning of the Board. *Davis v. West,* No. 98–141, slip op. 2000 WL 1141433 (Vet.App. July 12, 2000).

In his appeal to this court, Mr. Davis argues that the Court of Appeals for Veterans Claims erred in interpreting the "increase in disability" of 38 U.S.C. § 1153 as an overall worsening of the disability rather than as any observable increase in disability, irrespective of temporal duration.

## II.

Under 38 U.S.C. § 7292, this court lacks jurisdiction to review factual determinations challenged in appeals from the Court of Appeals for Veterans Claims except to the extent they present constitutional issues. 38 U.S.C. § 7292(d)(2) (2001). However, 38 U .S.C. § 7292(a) gives this court authority to review an interpretation of a statute or regulation by the Court of Appeals for Veterans Claims as long as that court relied on that interpretation in making its decision. 38 U.S.C. § 7292(a) (2001). This court reviews legal determinations of the Court of Appeals for Veterans Claims without deference. *Prenzler v. Derwinski,* 928 F.2d 392, 393 (Fed.Cir.1991).

Title 38 permits a veteran to establish service-connection for a preexisting injury or disease by showing that it was aggravated by active service:

A preexisting injury or disease will be considered to have been aggravated by active military, naval, or air service, *where there is an increase in disability during such service,* unless there is a specific finding that the increase in disability is due to the natural progress of the disease.

38 U.S.C. § 1153 (1994) (emphasis added). Where a veteran can show an increase in a preexisting disability, section 1153 establishes a finding of aggravation. The statute, however, expressly excludes from aggravation any increase in disability attributable to the natural progress of the preexisting disease. *Id.*

The Secretary has defined "disability" as "impairment in earnings capacity resulting from such diseases and injuries and their residual conditions." 38 C.F.R. § 4.1 (1990). The Secretary also has provided that "[i]n cases involving aggravation by active service, the rating will reflect only the degree of disability over and above the degree existing at the time of entrance into the active service." 38 C.F.R. § 4.22 (1990). The Secretary's definition of "disability" comports well with its common usage. *See Webster's Ninth New Collegiate Dictionary* 359 (9th ed.1990) (defining disability as the "inability to pursue an occupation because of physical or mental impairment"). A corollary to the Secretary's usage is that an increase in disability must consist of worsening of the enduring disability and not merely a temporary flare-up of symptoms associated with the condition causing the disability.

The Secretary's administration of the VA rating system further discloses his interpretation of the term "increase in dis-

ability." 38 C.F.R. § 4.1. These regulations recognize that determinations of the level of disability must account for periods of recurrence and remission for psychiatric disorders:

> When evaluating a mental disorder, the rating agency shall consider the frequency, severity, and duration of psychiatric symptoms, the length of remissions, and the veteran's capacity for adjustment during periods of remission. The rating agency shall assign an evaluation based on all the evidence of record that bears on occupational and social impairment rather than solely upon the examiner's assessment of the level of disability at the moment of examination.

38 C.F.R. § 4.126(a). Thus, the Secretary's regulation recognizes that psychiatric disorders abate and recur. The regulations thus reasonably set the level of disability, not by reference to isolated periods of activity or remission, but by assessing the effects of the disease or injury over the history of the condition. Thus, "increase in disability" is not assessed by the Secretary in terms of a temporary flare-up or a passing change in symptoms.

■ The Secretary has adopted other regulations concerning aggravation under § 1153: "Aggravation may not be conceded where the disability underwent no increase in severity during service on the basis of all the evidence of record pertaining to the manifestations of the disability prior to, during, and subsequent to service." 38 C.F.R. § 3.306(b). In sum, the Secretary has adopted a reasonable interpretation of "disability" and "increase in disability" to which this court defers. *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Indeed this

court has similarly stated that § 1153 "requires some increase in the severity of the preexisting condition causally related to military service." *Jensen v. Brown,* 19 F.3d 1413, 1416 (Fed.Cir.1994). Accordingly, § 1153 requires an increase in the severity of the preexisting condition, as distinguished from the mere recurrence of manifestations of the pre-service condition. Evidence of a temporary flare-up, without more, does not satisfy the level of proof required of a non-combat veteran to establish an increase in disability.

The correctness of the Veterans Court's decision in this case also finds support in the different treatment afforded combat veterans and former prisoners of war. Section 1154(b) gives combat veterans a liberalized burden of proof on service connection:

> In the case of any veteran who engaged in combat with the enemy in active service with a military naval, or air organization of the United States during a period of war, campaign, or expedition, the Secretary shall accept as sufficient proof of service-connection of any disease or injury alleged to have been incurred in or aggravated by such service satisfactory lay or other evidence of service incurrence or aggravation of such injury or disease, if consistent with the circumstances, conditions, or hardships of such service, notwithstanding the fact that there is no official record of incurrence or aggravation in such service, and, to that end, shall resolve every reasonable doubt in favor of the veteran.

38 U.S.C. § 1154(b) (1994). This section, however, does not offer the same liberalized proof requirements for veterans who did not engage in combat with the enemy in active service. *Id.* Thus, Mr. Davis does not benefit from the provisions of

§ 1154(b). Nonetheless Mr. Davis in effect seeks similar treatment.

The Secretary has implemented 38 U.S.C. § 1154(b) and its liberalized standards for combat veterans as follows:

> Due regard will be given the places, types, and circumstances of service and particular consideration will be accorded combat duty and other hardships of service. *The development of symptomatic manifestations of a preexisting disease or injury during or proximately following action with the enemy or following a status as a prisoner of war will establish aggravation of a disability.*

38 C.F.R. § 3.306(b)(2) (1992) (emphasis added). Under the plain language of this provision, aggravation may be established both by "symptoms indicative of a temporary increase in the severity of a preexisting condition as well as those indicative of a more permanent change in condition." *Jensen*, 19 F.3d at 1416. This liberalization of the general evidentiary rule accommodates "the unarguable difficulty a veteran encounters in gathering conclusive evidence of a service-connected increase in the severity of a preexisting condition under the rigors of combat or as a prisoner of war." *Id.* at 1417.

Because 38 C.F.R. § 3.306(b)(2) eases the general rule, it does not articulate an embodiment of that general rule. Thus, Mr. Davis' argument that 38 U.S.C. § 1153 permits temporary flare-ups to show increased disability equates his status with the favored treatment afforded combat veterans in 38 C.F.R. § 3.306(b)(2) and the statutory provision that it implements, 38 U.S.C. § 1154(b). In essence, this argument seeks to make the preferred rule for combat veterans into the general rule itself. This argument does not find support in the statute. *See King v. St. Vincent's Hosp.*, 502 U.S. 215, 221, 112 S.Ct. 570, 116 L.Ed.2d 578 (1991) (stating that statutory construction counsels against allowing one statutory provision to negate or detract from another).

The Secretary's understanding of 38 U.S.C. § 1153, which this court approves, is consistent with relevant opinions of the Court of Appeals for Veterans Claims. *See, e.g., Maxson v. West*, 12 Vet.App. 453, 459 (1999); *Verdon v. Brown*, 8 Vet.App. 529, 537 (1996); *Hunt v. Derwinski*, 1 Vet.App. 292, 296 (1991). In *Hunt*, for example, the Court of Appeals for Veterans Claims refused service-connection to a veteran for aggravation of a pre-existing knee injury, finding: "While there was temporary worsening of [the veteran's] *symptoms*, the condition itself, which lent itself to flare-ups, did not worsen. In short, the disability remained unaffected by these flare-ups." *Id.* at 296. The veteran in *Hunt* had injured his knee one month prior to his induction into service, which spanned July 22, 1952, to July 13, 1954, and included wartime duty in Korea.[2] The veteran was hospitalized following the initial knee injury, and also received treatment for flare-ups of the injury at various times during the course of his service. Nevertheless, the veteran's discharge medical records indicated that there had been no substantial change in the underlying condition of the knee during the veteran's service. The evidence of the flare-ups was insufficient, therefore, to demonstrate worsening of the underlying knee injury.

This court holds that evidence of temporary flare-ups symptomatic of an underly-

---

2. Because the veteran did not argue for application of 38 C.F.R. § 3.306(b)(2), it is presumed that he neither engaged in combat nor was a prisoner of war.

ing preexisting condition, alone, is not sufficient for a non-combat veteran to show increased disability under 38 U.S.C. § 1153 unless the underlying condition is worsened.

## CONCLUSION

In sum, the Court of Appeals for Veterans Claims correctly construed the law to preclude Mr. Davis from establishing a presumption of aggravation under 38 U.S.C. § 1153 using only evidence that he experienced a temporary flare-up symptomatic of his preexisting condition. The decision of the Court of Appeals for Veterans Claims therefore is affirmed.

## COSTS

Each party shall bear its own costs.

*AFFIRMED.*