﻿Citation Nr: 19172637
Decision Date: 09/19/19 Archive Date: 09/18/19

DOCKET NO. 18-49 861
DATE: September 19, 2019

ORDER

Entitlement to service connection for an acquired psychiatric condition, to include posttraumatic stress disorder (PTSD) and depression, is granted.

REMANDED

Entitlement to a total disability rating based on individual unemployability due to service connected disabilities (TDIU) is remanded.

FINDINGS OF FACT

The weight of the evidence indicates that the Veteran has a current diagnosis of an acquired psychiatric disorder that is related to service.

CONCLUSIONS OF LAW

The criteria for entitlement to service connection for an acquired psychiatric disorder, to include PTSD and depression, have been met. 38 U.S.C. §§ 1101, 1110, 1111; 38 C.F.R. §§ 3.303, 3.304.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from August 1972 to November 1973.

This matter comes to the Board of Veterans’ Appeals (Board) on appeal from a September 2017 rating decision of a Department of Veterans Affairs (VA) Regional Office (RO).

The Board notes that the issue on appeal was characterized as entitlement to service connection for PTSD and entitlement to service connection for depression. However, in light of the evidence of record, the Board has recharacterized the issue more broadly to ensure complete consideration of the claim. See Clemons v. Shinseki, 23 Vet. App. 1, 5-6, 8 (2009).

Service Connection

Service connection may be granted for a disability resulting from a disease or injury incurred in or aggravated by active service. 38 U.S.C. § 1110; 38 C.F.R. § 3.303(a). To establish service connection for a disability, a Veteran must show: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 38 F3d 1163 (Fed. Cir. 2004). 

Service connection for PTSD requires medical evidence diagnosing the condition in accordance with 38 C.F.R. § 4.125(a); a link, established by medical evidence, between current symptoms and an in-service stressor; and credible supporting evidence that the claimed in-service stressor occurred. 38 C.F.R. § 3.304(f)(5) and 38 C.F.R. § 4.125 (requiring PTSD diagnoses to conform to the criteria in the Diagnostic and Statistical Manual of Mental Disorders (5th ed. 2013) (DSM-V)). When a Veteran’s stressor is related to fear of hostile military or terrorist activity and PTSD is diagnosed by a VA psychiatrist or psychologist, the Veteran’s statements alone may establish the occurrence of the claimed stressor if the stressor is consistent with the places, types, and circumstances of the Veteran’s service. 38 C.F.R. § 3.304(f)(3).

A veteran will be considered to have been in sound condition when examined, accepted and enrolled for service, except as to defects, infirmities, or disorders noted at entrance into service, or where clear and unmistakable (obvious or manifest) evidence demonstrates that an injury or disease existed prior thereto and was not aggravated by such service. Only such conditions as are recorded in examination reports are considered as noted. 38 U.S.C. § 1111; 38 C.F.R. § 3.304 (b). When determining whether a defect, infirmity, or disorder is “noted” at entrance into service, supporting medical evidence is needed. Crowe v. Brown, 7 Vet. App. 238 (1994). 

VA’s General Counsel has held that to rebut the presumption of sound condition under 38 U.S.C. § 1111, VA must show by clear and unmistakable evidence both that the disease or injury existed prior to service and that the disease or injury was not aggravated by service. The claimant is not required to show that the disease or injury increased in severity during service before VA’s duty under the second prong of this rebuttal standard attaches. VAOPGCPREC 3-2003; see also Wagner v. Principi, 370 F.3d 1089 (Fed. Cir. 2004). If the presumption of soundness is not rebutted, the claim is treated as one for ordinary service connection.

The Court of Appeals for Veterans Claims has held that lay statements by a veteran concerning a preexisting condition are not sufficient to rebut the presumption of soundness. Paulson v. Brown, 7 Vet. App. 466, 470 (1995) (a lay person’s account of what a physician may or may not have diagnosed is insufficient to support a conclusion that a disability preexisted service); Crowe v. Brown, 7 Vet. App. 238 (1994) (supporting medical evidence is needed to establish the presence of a preexisting condition); see also Leshore v. Brown, 8 Vet. App. 406 (1995) (The mere transcription of medical history does not transform the information into competent medical evidence merely because the transcriber happens to be a medical professional.).

A pre-existing injury or disease will be considered to have been aggravated by active service where there is an increase in disability during such service, unless there is a specific finding that the increase in disability is due to the natural progress of the disease. 38 U.S.C. § 1153; 38 C.F.R. § 3.306(a).

Clear and unmistakable evidence (obvious or manifest) is required to rebut the presumption of aggravation where the preservice disability underwent an increase in severity during service. 38 C.F.R. § 3.306 (b). Aggravation may not be conceded where the disability underwent no increase in severity during service on the basis of all the evidence of record pertaining to the manifestations of the disability prior to, during, and subsequent to service. 38 C.F.R. § 3.306(b). See also Davis v. Principi, 276 F.3d 1341, 1345 (Fed. Cir. 2002) (Evidence of a temporary flare-up, without more, does not satisfy the level of proof required of a non-combat Veteran to establish an increase in disability.).

A lay witness is competent to testify as to the occurrence of an in-service injury or incident where such issue is factual in nature. Grottveit v. Brown, 5 Vet. App. 91, 93 (1993). In some cases, lay evidence will also be competent and credible on the issues of diagnosis and etiology. See Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007); see also Robinson v. Shinseki, 557 F.3d 1355 (Fed. Cir. 2009) (non-precedential). Specifically, lay evidence may be competent and sufficient to establish a diagnosis where (1) a layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. Jandreau, 492 F.3d at 1377; see also Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009). A layperson is competent to identify a medical condition where the condition may be diagnosed by its unique and readily identifiable features. See Barr v. Nicholson, 21 Vet. App. 303, 307 (2007). Additionally, where symptoms are capable of lay observation, a lay witness is considered competent to testify to a lack of symptoms prior to service, continuity of symptoms after in-service injury or disease, and receipt of medical treatment for such symptoms. Layno v. Brown, 6 Vet. App. 465, 469-71 (1994); Charles v. Principi, 16 Vet. App. 370, 374 (2002).

Acquired Psychiatric Disorder

The service treatment records show that a psychiatric disorder was not noted on the Veteran’s June 1972 entrance examination. However, the Veteran noted that he had a “nervous condition” on a contemporaneous Report of Medical History. In September 1973, the Veteran was referred for psychiatric treatment and presented with complaints of flashbacks and a feeling that he could not tolerate the situation of his command. Based on the results of the examination, he was diagnosed with chronic drug abuse, reactive depression, and immature personality with sociopathic features. The clinician did not feel that the Veteran was mentally ill, and noted a longstanding character disorder. At other September 1973 treatment the impression was depressive symptoms secondary to drug abuse.

The Veteran submitted a statement in February 2017 indicating that he was assaulted multiple times during service. He reported the incidents to superior officers, but nothing was done, and he coped by drinking alcohol and smoking marijuana to dull the effects and memories of the assault. The Veteran further stated he was subsequently arrested for drug possession and was detained at his base. He went through drug and alcohol counseling, and his counselor recommended an early discharge. 

VA treatment records beginning in February 2010 show diagnoses of a depressive disorder. At February 2010 VA treatment the Veteran reported that drug use led to him being discharged from the Navy. At October 2016 VA treatment the Veteran reported experiencing depression since his late 20s.

The Veteran had a VA examination in August 2017 at which he was diagnosed with major depressive disorder, recurrent, moderate. The examiner indicated that the symptoms did not meet the diagnostic criteria for PTSD under DSM-V criteria. The Veteran recounted an incident where he was punched in the back of the head during service but did not lose consciousness. It was noted that the first documented experience of depression was during service and that it was secondary to his drug abuse, which started prior to service. The Veteran was treated for psychiatric issues as a teenager and was arrested twice during that time for selling marijuana. He reported that he started having anxiety attacks in 1978, and that by 1981 he also had recurring depression. The examiner concluded that there was no compelling evidence that the Veteran’s major depressive disorder was caused or aggravated by any specific military-related event or by his time in the military in general. 

The Veteran wrote in July 2019 that he does not remember experiencing any symptoms of his current psychiatric condition prior to service. He was assaulted three times during service, feared for his life, and began to have symptoms of depression during service. To cope with his feelings, he abused drugs and alcohol, and he felt anxious and depressed after being discharged. The Veteran had panic attacks so severe that he could not function.

In July 2019, Dr. J. S. submitted correspondence noting that the Veteran indicated that he was assaulted three different times during service and was in fear for his life. Dr. J. S. found that the Veteran met the full DSM-V diagnostic criteria for PTSD and recurrent, severe major depressive disorder. The two conditions were inextricably linked due to it being impossible to separate their respective symptoms. Dr. J. S. further found that the Veteran’s PTSD was at least as likely as not due to service. The in-service assault caused the Veteran to be in persistently in fear for his life, and treatment records were consistent with the Veteran’s reports that he was being targeted by others. He experienced a stressful situation which was beyond his ability to cope with. Dr. J. S. also found that the Veteran’s major depressive disorder was at least as likely as not related to service, as it is the same disorder that was noted during service. He reported that, during service, the Veteran was intrusively and distressingly re-experiencing his noted in-service stressors.

At the outset, the Board notes that the Veteran’s depression was not noted at his entrance to service. While the Veteran noted a “nervous condition” on his Report of Medical History, the Board finds the entrance examination to be the most probative evidence indicating that the Veteran did not suffer from a psychiatric condition upon entry. Because there is no clear and unmistakable evidence that the Veteran’s depression pre-existed service and was not aggravated during service, the presumption of soundness is not rebutted, and the Veteran’s claim becomes one of direct service connection.

The Board finds the July 2019 evaluation by Dr. J. S. highly probative because it is based on a review of the record and contains clear conclusions with supporting data connected by a reasoned medical explanation. Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 301-02 (2008). As Dr. J. S. has competently linked the Veteran’s psychiatric disorders to his experiences in service, the Veteran is entitled to prevail on his claim of entitlement to service connection for an acquired psychiatric disorder, to include PTSD and depression.

REASONS FOR REMAND

TDIU

Regarding the Veteran’s claim of entitlement to TDIU, the Board finds that it is inextricably intertwined the with acquired psychiatric disorder issue for which service connection is granted by this decision. The assignment of a disability rating for the Veteran’s acquired psychiatric disability may impact whether he satisfies the schedular requirements for a TDIU rating, as set forth in 38 C.F.R. § 4.16(a). As such, the claims are inextricably intertwined and must be considered together, and a decision by the Board on the Veteran’s TDIU claim would, at this point, be premature. See Henderson v. West, 12 Vet. App. 11, 20 (1998). 

The matters are REMANDED for the following action:

Upon completion of any additional development following the rating assignment for the newly service-connected acquired psychiatric disorder, readjudicate the claim for TDIU. If the benefit is not granted, issue the Veteran and his representative a supplement statement of the case (SSOC) and return the matter to the Board for further review.

 

 

SCOTT SHOREMAN

Acting Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board A. Daniels, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.