Citation Nr: AXXXXXXXX
Decision Date: 06/30/21 Archive Date: 06/30/21

DOCKET NO. 210601-163512
DATE: June 30, 2021

ORDER

Entitlement to service connection for multiple myeloma is granted.

Entitlement to service connection for bilateral hearing loss is granted.

FINDINGS OF FACT

1. Resolving all doubt in favor of the Veteran, the circumstances of his service at Don Muang Royal Thai Air Force Base (RTAFB) in Thailand from May 1964 to June 1965 brought him in close proximity to the base perimeter on a regular basis, thereby exposing him to herbicides.

2. The Veteran's currently diagnosed multiple myeloma is presumed to be related to his acknowledged in-service exposure to herbicides.

3. Bilateral hearing loss is shown to be caused or aggravated by the Veteran's service-connected multiple myeloma.

CONCLUSIONS OF LAW

1. The criteria for service connection for multiple myeloma have been met. 38 U.S.C. §§ 1110, 1116, 1131, 5107; 38 C.F.R. § 3.102, 3.303, 3.307, 3.309.

2. The criteria for service connection for bilateral hearing loss have been met. 38 U.S.C. §§ 1101, 1110, 1111, 1112, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.306.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from August 1961 to August 1969. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a rating decision issued in April 2021 by a Department of Veterans Affairs (VA) Regional Office under the modernized appeals system known as the Appeals Modernization Act (AMA). In June 2021, the Veteran timely appealed this rating decision to the Board and requested direct review of the evidence considered by the Agency of Original Jurisdiction (AOJ). Thus, the Board's review is limited to evidence of record at the time of the April 21, 2021 rating decision on appeal. 

As an initial procedural matter, the Board acknowledges the Veteran's June 15, 2021 request to submit additional medical evidence; however, the evidentiary window is limited to that evidence of record at the time of the April 2021 decision. Furthermore, the claims are being granted. Accordingly, there is no need for the Veteran to file a Supplemental Claim and submit this evidence. 

Service Connection

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C. § 1110; 38 C.F.R. § 3.303(a). Service connection may also be granted for any disease diagnosed after discharge, when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). Direct service connection may not be granted without evidence of a current disability; in-service incurrence or aggravation of a disease or injury; and a nexus between the claimed in-service disease or injury and the present disease or injury. Id; see also Caluza v. Brown, 7 Vet. App. 498, 506 (1995) aff'd, 78 F.3d 604 (Fed. Cir. 1996).

The existence of a current disability is the cornerstone of a claim for VA disability compensation. See Degmetich v. Brown, 104 F.3d 1328 (1997); Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992). The requirement of a current disability is satisfied when the veteran has a disability at the time he or she files a service connection claim or during the pendency of that claim, even if the disability resolves prior to the adjudication of the claim. McClain v. Nicholson, 21 Vet. App. 319, 321 (2007). However, when the record contains a recent diagnosis of disability prior to the filing a claim for benefits based on that disability, the report of the diagnosis is relevant evidence that the Board must address in determining whether a current disability existed at the time the claim was filed or during its pendency. Romanowsky v. Shinseki, 26 Vet. App. 289 (2013).

Additionally, for Veterans who have served 90 days or more of active service during a war period or after December 31, 1946, certain chronic disabilities, such as malignant tumors, are presumed to have been incurred in service if manifest to a compensable degree within one year of discharge from service. 38 U.S.C. §§ 1101, 1112, 1137; 38 C.F.R. §§ 3.307, 3.309.

Alternatively, when a disease at 38 C.F.R. § 3.309(a) is not shown to be chronic during service or the one-year presumptive period, service connection may also be established by showing continuity of symptomatology after service. See 38 C.F.R. § 3.303(b). However, the use of continuity of symptoms to establish service connection is limited only to those diseases listed at 38 C.F.R. § 3.309(a) and does not apply to other disabilities which might be considered chronic from a medical standpoint. See Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013).

In addition, the Veteran has contended, in essence, that his claimed disorder is due to exposure to herbicide agents while on active duty. As will be discussed, infra, it is presumed he was exposed to herbicide agents, such as Agent Orange, during this period. 

If a veteran was exposed to a herbicide agent during active military, naval, or air service, the following diseases shall be service-connected if the requirements of 38 C.F.R. § 3.307(a)(6) are met, even though there is no record of such disease during service, provided further that the rebuttable presumption provisions of 38 C.F.R. § 3.307(d) are also satisfied: AL amyloidosis, chloracne or other acneform diseases consistent with chloracne, Type 2 diabetes (also known as Type II diabetes mellitus or adult-onset diabetes), Hodgkin's disease, ischemic heart disease, all chronic-B cell leukemias, multiple myeloma, non-Hodgkin's lymphoma, early onset peripheral neuropathy, porphyria cutanea tarda, prostate cancer, respiratory cancers, and soft-tissue sarcomas. 38 C.F.R. § 3.309(e).

The diseases listed at 38 C.F.R. § 3.309(e) shall have become manifest to a degree of 10 percent or more at any time after service, except that chloracne or other acneform disease consistent with chloracne, porphyria cutanea tarda, and early-onset peripheral neuropathy shall have become manifest to a degree of 10 percent or more within a year after the last date on which the veteran was exposed to an herbicide agent during active military, naval, or air service. 38 C.F.R. § 3.307(a)(6)(ii).

1. Entitlement to service connection for multiple myeloma.

As an initial matter, the Board notes that the Veteran was diagnosed with multiple myeloma in 2016 and has been treated for residuals and monitored for recurrence of such during the pendency of the appeal. See April and August 2019 Disability Benefits Questionnaire Reports. 

The Veteran does not allege, nor does the record reflect, that his currently diagnosed multiple myeloma is directly or presumptively related to service based on the manifestation of a chronic disease during service, or within one year of service discharge, to include based on a continuity of symptomatology. Robinson v. Shinseki, 557 F.3d 1355, 1361 (2008) (claims which have no support in the record need not be considered by the Board as the Board is not obligated to consider "all possible" substantive theories of recovery. Where a fully developed record is presented to the Board with no evidentiary support for a particular theory of recovery, there is no reason for the Board to address or consider such a theory). 

Rather, he claims that service connection is warranted as presumptively related to in-service exposure to herbicides coincident with his service at Don Muang RTAFB, as his duties brought him in close proximity to the base perimeter on a regular basis.

While there is no presumption of exposure to herbicide agents coincident with an individual's service in Thailand, in a May 2010 bulletin, VA noted that there was significant use of herbicides on the fenced in perimeters of military bases in Thailand, which was intended to eliminate vegetation and ground cover for base security purposes, as documented in the declassified Vietnam era Department of Defense (DOD) document titled "Project CHECO Southeast Asia Report: Based Defense in Thailand." Thus, VA has determined that a special consideration of herbicide exposure on a factual basis should be extended to veterans whose duties placed them on or near the perimeters of Thailand military bases during the Vietnam era, i.e., February 28, 1961, to May 7, 1975. In this regard, the majority of troops in Thailand during the Vietnam Era were stationed at the RTAFBs of U-Tapao, Ubon, Nakhon Phanom, Udorn, Takhli, Korat, and Don Muang. If a veteran served in the Air Force on one of these air bases as a security policeman, security patrol dog handler, member of a security police squadron, or otherwise served near the air base perimeter, as shown by evidence of daily work duties, performance evaluation reports, or other credible evidence, then herbicide exposure should be acknowledged on a facts-found or direct basis

In this regard, service personnel records reveal that the Veteran served in the Air Force and was assigned to the 35th Air Base Squadron at Don Muang RTAFB from May 1964 to June 1965 with a military occupational specialty (MOS) of Fire Protection Specialist. In an April 2019 statement, the Veteran reported that his daily military duties while stationed at Don Muang RTAFB included performing fire inspections on the flight line area, to include the structures and aircraft. The Veteran explained that these inspections required inspecting the flight line perimeter every day to ensure that there we no fire hazards or other safety issues. Furthermore, while such transit stop is not reflected in military personnel records, the Veteran reported traveling through Vietnam en route from Clark Air Force Base in the Philippines to Don Muang in Thailand.

VA memoranda indicate that, if a claim was based on servicing or working on aircraft that flew bombing missions over Vietnam, there was no presumption of "secondary exposure" based on being near or working on aircraft that flew over Vietnam or handling equipment once used in Vietnam. Aerial spraying of tactical herbicides over Vietnam did not occur everywhere and it was inaccurate to think that herbicides covered every aircraft and equipment associated with Vietnam. If the claim was based on general herbicide use within a military base, e.g., small scale brush or wed clearing activity along a flight line or around living quarters, there were no records of such activity involving tactical herbicides, only commercial herbicides. Such further indicates that tactical herbicides, e.g., Agent Orange, were used and stored in Vietnam, not Thailand. However, there are records indicating that commercial herbicides were frequently used for vegetation control within the perimeters of air bases during the Vietnam Era. The Thailand CHECO report did not recognize use of tactical herbicides in Thailand, but there was sporadic use of non-tactical (commercial) herbicides within fenced perimeters. Thus, if a veteran's MOS or unit was one that regularly had contact with the base perimeter, there was a greater likelihood of exposure to commercial pesticides and herbicides.

Based upon a review of the evidence and resolving all doubt in favor of the Veteran, the Board finds that the circumstances of his service at Don Muang RTAFB Thailand brought him in close proximity to the base perimeter on a regular basis, thereby exposing him to herbicide agents. Thus, his multiple myeloma is presumed to be related to his acknowledged in-service exposure to herbicides. Consequently, service connection for such disorder is warranted. 38 U.S.C. § 5107; 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).

1. Entitlement to service connection for bilateral hearing loss. 

In cases where a hearing loss disability is claimed, impaired hearing is considered a disability when the auditory threshold in any of the frequencies 500, 1000, 2000, 3000, or 4000 Hertz (Hz) is 40 decibels (dB) or greater; or when the auditory thresholds for at least three of the above frequencies are 26 decibels or greater; or when speech recognition scores using the Maryland CNC Test are less than 94 percent. 38 C.F.R. § 3.385. Thresholds for normal hearing are between zero and 20 decibels, and higher thresholds show some degree of hearing loss. See Hensley v. Brown, 5 Vet. App. 155 (1993).

Furthermore, service connection may be established on a secondary basis for a disability which is proximately caused by or aggravated by a condition for which service connection has already been established. 38 C.F.R. § 3.310. Temporary or intermittent flare-ups of symptoms of a condition, alone, do not constitute sufficient evidence aggravation unless the underlying condition worsened. Cf. Davis v. Principi, 276 F. 3d 1341, 13461347 (Fed. Cir. 2002); Hunt v. Derwinksi, 1 Vet. App. 292, 297 (1991).

The Veteran contends that he is entitled to service connection for bilateral hearing loss due to military noise exposure. In the alternative, the Veteran contends that his hearing loss was is due to radiation treatment for multiple myeloma, for which service connection has been granted, supra. 

The Veteran was afforded a VA hearing examination in August 2019, at which time the examiner noted a diagnosis of mixed hearing loss of the right ear and sensorineural hearing loss of the left ear. In this regard, the Veteran's auditory thresholds in the frequencies of 500, 1000, 2000, 3000, and 4000 were 40, 45, 65, 85, 95, and 105, respectively, in the right ear. For the left ear, such thresholds were 10, 10, 25, 45, and 60, respectively. Thus, the evidence of record establishes that the Veteran currently has a bilateral hearing loss disorder under VA regulations. As to the issue of service connection for the each ear on a direct basis, the VA examiner opined that it was less likely than not (i.e., less than a 50 percent probability) that the Veteran's bilateral hearing loss was caused by or the result of an event during military service. As a rationale, the examiner noted that the Veteran's separation examination was negative for findings of hearing loss or any significant shift in hearing acuity during the Veteran's military service. 

Regarding the right ear hearing loss, while this August 2019 opinion addressed a lack of direct nexus between the Veteran's right ear hearing loss and his military service, it failed to address the Veteran's report that his hearing loss is due to his service-connected multiple myeloma. However, the Board notes that other evidence of record reveals that the Veteran's current right ear hearing loss is secondary to his multiple myeloma. In this regard, in August 2019, the Veteran underwent medical examination for hematologic and lymphatic conditions, at which time the VA examiner noted that one of the current symptoms of multiple myeloma that the Veteran experiences is right ear hearing loss due to radiation for a right nasopharyngeal mass. 

Upon review, the Board affords probative value to the second August 2019 opinion as to the issue of service connection on a secondary basis for the Veteran's right ear hearing loss, as it was based on audiological examination of the Veteran and reflected consideration of all relevant facts, specifically citing to service treatment records, post-service treatment records, and the Veteran's lay statements. Moreover, the examiner offered clear conclusions with supporting data as well as reasoned medical explanations connecting the two. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008); Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007). Notably, the record does not contain a medical opinion to the contrary regarding the issue of service connection on a secondary basis.

Regarding the left ear hearing loss, the Board notes that the Veteran reported that he also experienced a shift in left ear hearing acuity coincident with this documented loss of right ear hearing due to treatment for multiple myeloma. The Board finds the Veteran's lay statements to be both competent and credible. The Board notes that the VA audiometry opinion of record does not address the question of service connection on a secondary basis and does not contradict the Veteran's statements regarding his bilateral loss of hearing following radiation treatment. See Hensley v. Brown, 5 Vet. App. 155, 157 (1993).

(Continued on Next Page)

In conclusion, the Board, therefore, affords the Veteran the benefit of the doubt and finds that bilateral hearing loss was caused, or at least aggravated, by radiation treatment for his service-connected multiple myeloma. 38 C.F.R. § 3.310; see also Gilbert, 1 Vet. App. at 53. Accordingly, service connection for bilateral hearing loss is granted. 

 

 

TIFFANY HANSON

Acting Veterans Law Judge

Board of Veterans' Appeals

Attorney for the Board M. Breckenridge

The Board's decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.