Citation Nr: AXXXXXXXX
Decision Date: 08/31/21 Archive Date: 08/31/21

DOCKET NO. 200305-74192
DATE: August 31, 2021

ORDER

Entitlement to service connection for a right thumb cyst is granted.

Entitlement to service connection for bilateral hearing loss is denied.

Entitlement to service connection for memory loss is denied.

Entitlement to service connection for a bilateral knee disability is denied.

Entitlement to service connection for residuals of bilateral feet frostbite is denied.

FINDINGS OF FACT

1. The Veteran's right thumb disorder, which pre-existed service, was aggravated during military service. 

2. The preponderance of the evidence of record is against a finding that the Veteran has, or has had at any time during the appeal, bilateral hearing loss for VA purposes.

3. The preponderance of the evidence of record is against a finding that the Veteran has, or has had at any time during the appeal, a memory loss disorder. 

4. The Veteran's bilateral knee disability was not incurred in or caused by active service. 

5. The Veteran's bilateral feet disability was not incurred in or caused by active service. 

CONCLUSIONS OF LAW

1. The criteria for service connection for right thumb cyst are met. 38 U.S.C. §§ 1110, 1112, 1113, 1131, 1153, 5103, 5103A, 5107; 38 C.F.R. § 3.306.

2. The criteria for service connection for bilateral hearing loss are not met. 38 U.S.C. §§ 1110, 1112, 1131,1137, 5107(b); 38 C.F.R. §§ 3.102, 3.303(a)-(b), (d), 3.307, 3.309(a).

3. The criteria for service connection for a memory loss disorder are not met. 38 U.S.C. §§ 1101, 1110, 1112, 1113, 1137, 5107; 38 C.F.R. §§ 3.303, 3.304, 3.310.

4. The criteria for service connection for a bilateral knee disability have not been met. 38 U.S.C. §§ 1110, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309, 3.310.

5. The criteria for service connection for a bilateral feet disability have not been met. 38 U.S.C. §§ 1110, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309, 3.310.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from September 1980 to September 1983. In a May 2015 legacy rating decision, service connection was denied for bilateral hearing loss, memory problems, right thumb cyst, bilateral knee, and bilateral feet disabilities. The Veteran initiated an appeal of these determinations. In August 2018, he opted to participate in the Rapid Appeals Modernization Program (RAMP), thereby making his claims subject to the Appeals Modernization Act (AMA). 38 C.F.R. §§ 3.2400 (c), 19.2(c). He specifically selected the Higher-Level Review lane. 

In the ensuing February 2019 and March 2019 rating decisions, each of the aforementioned denials was continued. The Veteran appealed these determinations to the Board of Veterans' Appeals (Board) under the AMA in a March 2020 Form 10182, selecting the hearing docket. Given the procedural history of this matter, the Board's decision is based on review of the evidence of record at the time the RAMP Opt-In Election form was received as well as evidence submitted at or within 90 days following his February 2021 virtual hearing before the undersigned. See 38 U.S.C. § 7113 (b); 38 C.F.R. § 20.302.

As such, the evidence submitted between receipt of the Veteran's RAMP opt-in form and the hearing as well as more than 90 days after the hearing is not considered herein. The Board points out that the Veteran and his representative were advised by the undersigned at the hearing that they had 90 days from the date of the hearing to submit any additional evidence or argument, and that they must resubmit any evidence received during the closed evidence window prior to the hearing. To the extent this evidence relates to the issues denied herein, he may file a Supplemental Claim and resubmit or identify it. 38 C.F.R. § 3.2501. If it is new and relevant, another rating decision considering it as well as the previous evidence will be issued by the agency of original jurisdiction (AOJ). Instructions for filing a Supplemental Claim are included below. To the extent the evidence submitted outside the allowable windows relates to the issue remanded herein, it will be considered when that issue is readjudicated by the AOJ.

As an initial matter, the Board acknowledges that the Veteran listed the issues of GERD, an acquired psychiatric disorder, and for sinusitis in the March 2020 NOD in an earlier Form 10182 NOD in January 2020. Because only one appeal of an issue can be active at any time and those issues were addressed and adjudicated in a June 2021 Board decision, they are not a part of the current appeal stream. 

Additionally, in the March 2020 NOD to the Board, the Veteran also included the issues of service connection for bilateral elbow, bilateral shoulder, headaches, and urinary problems. However, the issues of service connection for migraines and for bilateral elbows were denied in a November 1996 rating decision and it did not have a timely appeal. The issues of service connection for bilateral shoulder and urinary problems were denied in August 2009 and were not timely appealed. These rating decisions pre-dated the AMA by many years and are not eligible to be opted-in to the AMA. As such, these four issues are also not a part of the current appeal stream.

Service Connection

Service connection means that the facts, shown by evidence, establish that a particular injury or disease resulting in disability was incurred coincident with service, or if preexisting such service, was aggravated by service. This may be accomplished by affirmatively showing inception or aggravation during service. 38 C.F.R. § 3.303(a). Service connection may also be granted for disability shown after service, when all of the evidence, including that pertinent to service, shows that it was incurred in service. 38 C.F.R. § 3.303(d). 

Under 38 C.F.R. § 3.303(b), service connection will be presumed where there are either chronic symptoms shown in service or continuity of symptomatology since service for diseases identified as "chronic" in 38 C.F.R. § 3.309(a). Walker v. Shinseki, 708 F.3d 1331, 1338-40 (Fed. Cir. 2013) (holding that continuity of symptomatology is an evidentiary tool to aid in the evaluation of whether a chronic disease existed in service or an applicable presumptive period).

1. Entitlement to service connection for right thumb cyst

The Veteran contends that his right thumb cyst had its onset during his active service. 

The record reflects that a scar on his right thumb was noted upon the August 1980 entrance examination. The development of cysts in service were shown to be associated with the precise area of the scarring. Although the Veteran testified there was nothing wrong with his right thumb prior to service, the service entrance examination undermines his testimony, and for this reason the Board finds him to lack credibility as to the state of his right thumb at entrance. The Board finds that the Veteran's right thumb disorder at issue in this appeal was noted at service entrance. 

A preexisting disease or injury will be found to have been aggravated by service only if the evidence shows that the underlying disability underwent an increase in severity; the occurrence of symptoms, in the absence of an increase in the underlying severity, does not constitute aggravation of the disability. 38 U.S.C. § 1153; 38 C.F.R. § 3.306 (a); Davis v. Principi, 276 F.3d 1341, 1345 (Fed. Cir. 2002). The Veteran must submit, or the record must contain, some evidence demonstrating that the preexisting disability increased in severity during service for the presumption of aggravation to attach. Wagner v. Principi, 370 F.3d 1089 (Fed. Cir 2004); Verdon v. Brown, 8 Vet. App. 529 (1996).

Once the presumption attaches, it may be rebutted only by clear and unmistakable evidence demonstrating that any increase in disability was due to the natural progress of the disease, which burden is on the government. Wagner, supra; Cotant v. Principi, 17 Vet. App. 116 (2003); 38 C.F.R. § 3.306 (b).

As noted above, the STRs show that the Veteran had a scar on his right thumb at the exact spot where he eventually had cysts. Thus, the Board needs next to determine whether an increase in disability occurred during service. Thus, the presumption of soundness at entrance does not attach and the Board needs next to determine whether the pre-existing disorder was aggravated during service. 

The evidence shows that the Veteran developed a cyst on the dorsal side of his thumb. In July 1983, he had surgery to remove the cyst, but it came back in October 1983. In an August 1983 examination, the clinician noted that the Veteran had a traumatic injury to the right thumb. 

The Veteran was afforded a VA examination in March 2019 where the examiner concluded that it was clear and unmistakable that the Veteran's right thumb cyst was not aggravated by an in-service injury, event, or illness. The examiner claimed that temporary aggravation was plausible, but that there was no evidence of permanent aggravation of the pre-existing right thumb cyst. The examiner noted that while the Veteran had surgery to remove the cyst on his thumb, it came back but that the STRs were silent for any follow up after the surgery. 

At best, the March 2019 VA examiner was equivocal about whether there was aggravation in this case, and the examiner's allowance for some aggravation suffices to invoke the presumption of aggravation. To rebut that presumption, there must be clear and unmistakable evidence that the increase in disability was due to the natural progress of the disease. 

The Board finds the March 2019 VA examination on this point inadequate for adjudication purposes. The examiner did not adequately address whether the aggravation was clearly and unmistakably due to the natural progress of the disease. The examiner only addressed whether there was aggravation, permanent versus temporary. The Board finds that the presumption of aggravation has not been rebutted. Consequently, the Veteran's right thumb cyst was aggravated during military service, and service connection on that basis is warranted. 

For the foregoing reasons, and resolving reasonable doubt in the Veteran's favor, the Board finds that the preexisting right thumb disorder underwent an increase in severity during service beyond its natural progression, that is, the preexisting right thumb disorder was aggravated by service. 38 U.S.C. § 1153; 38 C.F.R. § 3.306. Accordingly, the Board resolves all reasonable doubt in favor of the Veteran and finds that the criteria for service connection for right thumb cyst are met. 38 U.S.C. § 5107 (b); 38 C.F.R. § 3.102.

2. Entitlement to service connection for bilateral hearing loss

Sensorineural hearing loss (organic disease of the nervous system) is a "chronic disease" listed under 38 C.F.R. § 3.309(a). Therefore, the presumptive service connection provisions of 38 C.F.R. § 3.303(b) apply to the Veteran's claim for service connection for hearing loss. 

Impaired hearing is considered a disability for VA purposes when the auditory threshold in any of the frequencies 500, 1000, 2000, 3000, or 4000 Hertz is 40 decibels or greater; where the auditory thresholds for at least three of these frequencies are 26 decibels or greater or when the Maryland CNC speech recognition scores are less than 94 percent. 38 C.F.R. § 3.385. The threshold for normal hearing is from 0 to 20 decibels, with higher threshold levels indicating some degree of hearing loss. Hensley v. Brown, 5 Vet. App. 155, 157 (1993). 

The Board concludes that the Veteran does not have bilateral hearing loss for VA purposes and has not had a diagnosis of bilateral hearing loss for VA purposes at any time during the pendency of the claim. 38 C.F.R. § 3.303 (a), (d). In the absence of proof of a present disability, there can be no valid claim. Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992).

The Veteran was afforded a VA audiological examination in December 2014, which shows that he did not meet VA's regulatory criteria for hearing loss. Puretone thresholds for the right ear, in decibels, at 500, 1000, 2000, 3000, and 4000 Hertz were as follows: 25, 25, 10, 15, and 15, and puretone thresholds for the left ear, in decibels, at 500, 1000, 2000, 3000, and 4000 Hertz were as follows: 20, 20, 15, 10, and 25. The speech recognition score, using the Maryland CNC Test, was 96 percent in the right ear and 94 percent in the left ear. Thus, the Veteran did not meet the regulatory criteria for bilateral hearing loss as defined by VA in 38 C.F.R. § 3.385.

While the Veteran believes that he has a diagnosis of bilateral hearing loss for VA purposes, he is not competent to provide a diagnosis in this case. The issue is medically complex, as it is based on audiometric findings and requires specialized medical education/knowledge to interpret diagnostic testing. Jandreau v. Nicholson, 492 F.3d 1372, 1377, 1377 n.4 (Fed. Cir. 2007). Consequently, the Board gives more probative weight to the competent evidence.

3. Entitlement to service connection for memory loss

The Board finds that the claim fails because there is no indication that the Veteran has a memory loss disorder. 

In this regard, the Veteran consistently complained of memory issues, but no clinician ever diagnosed the Veteran with an actual memory disorder. In fact, in the April 2015 VA PTSD examination, there was no mention of any memory issues. Moreover, throughout the Veteran's VA treatment records, clinicians reported that the Veteran's short term and long-term memory was intact. In August 2014, the Veteran reported that he was forgetful, that he could not remember things at home, and would forget simple things like why he entered a room. He furthered that he was under a lot of stress and thought that could be causing his memory issues. In March 2015 and for many other visits, the examiners reported that the Veteran had no gross deficits when it came to his memory. The Boards places high probative value on the medical records that show the Veteran does not have memory issues. 

The Board acknowledges the Veteran's belief that he has a memory loss disorder related to service. Although lay persons are competent to provide opinions on some medical issues, see Kahana v. Shinseki, 24 Vet. App. 428, 435 (2011), as to the specific issue in this case, diagnosis and etiology of a memory loss disorder, falls outside the realm of common knowledge of a lay person. See Jandreau v. Nicholson, 492 F.3d 1372, 1377 n.4 (Fed. Cir. 2007) (lay persons not competent to diagnose cancer).

Based on the foregoing, the appeal for service connection for a memory loss disorder must be denied.

4. Entitlement to service connection for bilateral knee disability

5. Entitlement to service connection for bilateral feet disability

The Veteran contends that his bilateral knee and bilateral feet disabilities are due to his time in the military. The Veteran specifically reported that his knees were injured due to the general wear and tear during the military and that he got frostbite in his feet and that he now experiences frostbite residuals. 

The AOJ found that the Veteran had a diagnosed knee disability and that the Veteran's service treatment records (STRs) from January 1982 showed the Veteran had second degree frostbite of the feet. The Board is bound by these favorable findings. 38 C.F.R. § 3.104 (c). Thus, with regard to the Veteran's bilateral knees, the question in this case is whether this disability is causally related to his active service. Regarding the Veteran's feet disability, since the AOJ only found that the Veteran's STRs reflected an instance of frostbite of his feet, the question is whether the Veteran has current frostbite residuals that was incurred in or caused by active service. 

STRs contain an instance in January 1982 where the Veteran was found to have frostbite in his feet, but there was no other indication of any frostbite residuals or any feet problems since then. Additionally, there was no indication of any knee issues in any of the STRs. In fact, in the August 1983 Report of Medical Examination, there was no indication of any knee or feet problems. 

Post-service medical treatment records reflect a diagnosis of bilateral knee patellar tendonitis, with the first report of knee pain in January 2009. In multiple instances, the Veteran attributed his knee disability to his running post-service. The first instance of any complaints regarding any foot problems was in January 2012 when the Veteran reported that he had burning pain over his feet for years. There are barely any complaints of foot problems in the post-service medical records. 

In a September 2015 statement by the Veteran's wife, she reported that the Veteran had to use a cane at all times due to his knees. 

At his February 2021 Board hearing, the Veteran testified that his knee disability stemmed from jumping in and out of a five-ton truck and setting the artillery guns. He explained that he would not go to sick call because of the culture in the military. The Veteran further reported that he went to sick call for frostbite in his feet. The Veteran's wife reported that the Veteran had skin growing at the bottom of his feet, that his feet were discolored, his feet had big brown and black spots, his feet itch, and that he has foot fungus in his toenails. 

At the outset, the Board recognizes that the Veteran has not been afforded a VA examination for his bilateral knees or for his feet. In this regard, the Board notes that, post-AMA, the Board may only remand an issue to correct any pre-decisional duty to assist errors and for "correction of any other error by the agency of original jurisdiction (AOJ) in satisfying a regulatory or statutory duty, if correction of the error would have a reasonable possibility of aiding in substantiating the appellant's claim." 38 C.F.R. § 20.802 (a).

An examination or opinion is necessary if the evidence of record (A) contains competent evidence that the claimant has a current disability, or persistent or recurrent symptoms of disability; and (B) establishes that the Veteran suffered an event, injury or disease in service; or has a presumptive disease or symptoms of such a disease manifesting during an applicable presumptive period; and (C) indicates that the claimed disability or symptoms may be associated with the established event, injury, or disease in service; but (D) does not contain sufficient medical evidence for the Secretary to make a decision on the claim. 38 C.F.R. § 3.159 (c)(4); see also McLendon v. Nicholson, 20 Vet. App. 79 (2006) (discussing the four elements to consider in determining whether a VA medical examination must be provided).

Here, at the time of the February 2019 and March 2019 AOJ decisions on appeal, the evidence of record established that the Veteran had a current bilateral knee disability, but that the Veteran did not have a diagnosed bilateral feet disability. However, as will be addressed in further detail below, STRs did not contain an in-service incurrence for any knee disability or pain and while there was an instance noting frostbite for the Veteran's feet, there was no follow up treatment or any other symptoms due to it during military service. Additionally, there was no evidence that either of the disabilities manifested during an applicable presumptive period and the Veteran had not asserted continuity of symptoms since service, and the only nexus opinions provided were from the Veteran and his wife. Although lay persons are competent to provide opinions on some medical issues, see Kahana v. Shinseki, 24 Vet. App. 428, 435 (2011), determining the etiology of a knee disability and diagnosing frostbite residuals are complex medical matters that fall outside the realm of common knowledge of a lay person. See Jandreau v. Nicholson, 492 F.3d 1372, 1377 n. 4 (Fed. Cir. 2007). As the Veteran and his wife are not shown to have the appropriate training and expertise, none are considered competent to render a probative opinion regarding the medical matters upon which these claims turn. Id.

Thus, the Board finds that the evidence of record at the time of the AOJ decision did not establish an in-service incurrence for a bilateral knee disability or a chronic disability for the frostbite in the Veteran's feet. Additionally, there was no indication that the Veteran's disabilities manifested during an applicable presumptive period nor was there any competent evidence indicating that the Veteran's bilateral knee disability was related to active service or that the Veteran had a current bilateral feet disability. Therefore, the AOJ did not have a duty to obtain a medical opinion or a VA examination with respect to these claims. See 38 C.F.R. §§ 3.159 (c); see also McLendon v. Nicholson, 20 Vet. App. 79, 84 (2006); Waters v. Shinseki, 601 F.3d 1274, 1278 (Fed. Cir. 2010) (noting that a conclusory lay statement that a current condition is related to service is insufficient to warrant a medical examination because it would "eliminate the carefully drafted statutory standards governing the provision of medical examinations and require the Secretary to provide such examinations in virtually every veteran's disability case"). As such, the Board finds that an examination was not necessary, and there was no pre-decisional duty to assist error in this respect. See Locklear v. Nicholson, 20 Vet. App. 410 (2006); see also McLendon, 20 Vet. App. at 83.

After review of the evidence, the Board finds that the preponderance of the evidence is against the Veteran's claims of entitlement to service connection for a bilateral knee and bilateral feet disability. There is no evidence that the Veteran's knee disability was present during the Veteran's period of active duty or manifested to a compensable degree within one year of separation. Even assuming that the Veteran had pain or any injury to his knees during active service, the Veteran does not claim that he received a diagnosis or treatment for a bilateral knee disability during active service, and his separation examination revealed normal lower extremity evaluations. The earliest indication that he received a diagnosis of a knee disability or any related treatment was decades after his discharge from active service. 

Additionally, regarding the Veteran's bilateral feet disability, while there is an indication that the Veteran suffered from frostbite in his feet during military service, there was only one notation about it. There was no additional follow up treatment or complaints regarding any residuals of frostbite. The Veteran does not claim that his frostbite in his feet was a chronic issue during active service, and his separation examination revealed normal lower extremity evaluations. The earliest indication that he complained of a feet disability was decades after his discharge from active service. Additionally, the Veteran only complained a few times and clinicians usually found that there was nothing going on with his feet. 

Although the Board acknowledges that the Veteran, at his Board hearing, indicated that he experienced pain in his knees and experienced frostbite residuals in his feet during service and on an ongoing basis since, the Board does not afford statements any probative value. The Board finds that the Veteran's statements regarding the onset of his knee and feet problems are inconsistent with the contemporaneous treatment records, showing a lack of complaints or treatment for any knee problem and having no follow up complaints or treatment for the frostbite in his feet despite seeking treatment for numerous other concerns during active service. The Board finds that the probative value of the STRs outweighs the Veteran's recollections regarding his onset of his knee and feet problems and that his recollections lack credibility in this regard. 

Furthermore, although there is a lack of medical treatment records from the date of his separation from service in 1983 until at least 2009, the available records indicate that the Veteran was diagnosed with a knee disability and attribute it to his recreational running. There is no indication that the clinicians believe his knee disability was due to his time in the military. Moreover, the available records have very limited instances of complaints about the Veteran's feet and there is no indication that those complaints were related to any frostbite residuals. The Board finds that the probative value of the medical treatment records outweighs the Veteran's report of continuity of knee and feet symptoms since service, and his assertions lack credibility in this regard. 

Thus, the Board finds the Veteran's report of onset and continuity of symptoms inconsistent with the evidence of record and is, therefore, not credible in this regard. Thus, the weight of the competent and credible evidence indicates that the Veteran did not manifest either a diagnosis of bilateral knee pain or residuals of frostbite in the feet during service or within one year of separation from service or continuity of symptomology since separation from service. See 38 C.F.R. §§ 3.303, 3.307(a)(3), 3.309(a).

Moreover, there is no probative medical opinion establishing a nexus between either a current diagnosis of bilateral knee disability or of the complaints of frostbite residuals and military service. 

The Board has considered the lay statements of record indicating a nexus between the Veteran's bilateral knee and feet disabilities and active service. As noted above, however, as neither the Veteran nor his wife is shown to possess the medical training to render competent opinions about such complex medical matters, these statements are afforded no probative value. See Davidson, 581 F. 3d at 1313; Jandreau v. Nicholson, 492 F. 3d 1372 (Fed. Cir. 2007); Buchanan v. Nicholson, 451 F. 3d 1331 (Fed. Cir. 2006).

Based on the foregoing, the Board finds that the preponderance of the evidence is against a grant of service connection for bilateral knee and bilateral feet disability. In reaching this conclusion, the Board has considered the benefit-of-the-doubt doctrine. However, as the preponderance of the evidence is against the Veteran's claim, that doctrine is not applicable, and service connection must be denied. 38 U.S.C. § 5107 (b). 

 

 

Thomas H. O'Shay

Veterans Law Judge

Board of Veterans' Appeals

Attorney for the Board S. Imam, Associate Counsel

The Board's decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.